**ACADEMY OF MOTION PICTURE ARTS AND SCIENCES, a California non-profit corporation, Plaintiff,**

v.

**NETWORK SOLUTIONS, INC., a Delaware corporation; and Does 1–50, Defendants.**

No. CV 97–6394–LEW(Mcx).

United States District Court, C.D. California.

Dec. 22, 1997.

Quinn Emanuel Urquhart & Oliver, LLP, David W. Quinto, Anna Y. Joo, Paul S. Chan, Los Angeles, CA, for Plaintiff.

Blanc Williams Johnston & Kronstadt, LLP, Ronald L. Johnston, John C. Rawls, Mary C. Tesh, Los Angeles, CA, Hanson and Molloy, Philip L. Sbarbaro, Washington, DC, for Defendant.

1. Domain names are used to locate information on the Internet. Each computer or network linked to the Internet has a unique numerical address called an Internet Protocol number ("IP number"). An IP number is four groups of digits separated by decimal points, for example, "013.917.114.41." These IP numbers are converted into a more user-friendly, letter based

AMENDED ORDER DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

LAUGHLIN E. WATERS, Senior District Judge.

BACKGROUND:

This case came before the Court for oral argument on a preliminary injunction motion on November 12, 1997, the Honorable Laughlin E. Waters, Senior United States District Court Judge presiding. The Court, having taken the matter under submission following oral argument, now issues its formal order.

Facts:

Network Solutions, Inc. ("Network Solutions") is a private company which performs the function of registering Internet domain names [1]. It is currently under contract with the National Science Foundation ("NSF") and is the leading registrar of domain names. It is the only organization which is permitted to register domain names ending in ".com", ".org", ".net", ".edu" or ".gov." It registers over 100,000 new domain names each month—approximately one every 20 seconds. The process of registration is quite simple. A person seeking to register a domain name contacts Network Solutions by computer and enters the name sought to be registered. The name is then compared with all of the existing domain names in Network Solutions' database. If the name entered has not already been assigned to somebody else, and if it is not screened out because it matches words found by Network Solutions to be obscene or restricted in use by a federal statute (e.g."NASA"), Network Solutions will register the domain name to the individual or entity seeking registration. The whole process is generally completed without human intervention. In addition to registering do-

format called a "domain name" by specialized computers called "domain name servers." A typical domain name would appear as follows: "winesap.apples.net." See Lockheed Martin Corp. v. Network Solutions, 985 F.Supp. 949 (C.D.Cal.1997) (Order Granting Defendant's Motion for Summary Judgment) for more on domain names, their function and use.

main names, Network Solutions also maintains a database which keeps track of who owns each domain name.

The Academy of Motion Picture Arts and Sciences ("the Academy") owns trademarks in, among other registered marks, "ACADEMY AWARDS" and "OSCAR." The Academy contends that Network Solutions has registered domain names such as, *inter alia*, "academyaward.com," "academy-awards.net," "academyawards.net," "theoscars.net," and "oscar.net," to parties other than the Academy. The Academy claims that Network Solutions, in allowing these names to be registered to individuals and companies other than the Academy, has engaged in unlawful activity. Specifically, the Academy alleges that Network Solutions is guilty of trademark dilution, contributory trademark dilution, trademark infringement, wrongful use of a registered mark, contributory trademark infringement, contributory wrongful use of a registered mark, false designation of origin and false use, and unfair competition. The Academy seeks an injunction pending trial requiring Network Solutions to immediately cease and desist its registration of Internet domain names which incorporate or are "confusingly similar to" registered trademarks and service marks owned by the Academy.

**LEGAL STANDARD:**

In order to obtain a preliminary injunction, a party must demonstrate that: 1) there is a strong likelihood that the party will eventually succeed on the merits; 2) there is a possibility it will suffer irreparable injury if injunctive relief is denied; 3) the balance of potential hardships favors the party seeking the injunction; and 4) an injunction would advance the public interest. *Rendish v. City of Tacoma,* 123 F.3d 1216, 1219 (9th Cir. 1997); *International Jensen v. Metrosound U.S.A.,* 4 F.3d 819, 822 (9th Cir.1993). A test frequently applied in weighing these factors requires the Court to find, either: 1) a combination of probable success on the merits and irreparable injury is likely, or 2) serious questions are raised going to the merits and the balance of hardships tips sharply in favor of the party seeking the injunction. *Rendish,* 123 F.3d at 1219; *International Soc'y for Krishna Consciousness of California v.*

*City of Los Angeles,* 966 F.Supp. 956, 958 (C.D.Cal.1997).

**ANALYSIS:**

**I.  Likelihood of Success on the Merits**

Before granting a preliminary injunction the Court must be persuaded that there is a strong probability that the Academy will be successful in one or more of its claims against Network Solutions. *Rendish,* 123 F.3d at 1219. It is necessary to start, therefore, with an examination of the specific claims brought by the Academy.

*A.  Dilution and Contributory Dilution Claims*

**1.  Federal Claims**

The Academy first alleges that there is a strong likelihood of success on the merits of their federal dilution claims. They claim that Network Solution's registration of domain names including or similar to the words "ACADEMY AWARDS" and "OSCARS," marks registered by the Academy, violated the Federal Trademark Anti-dilution Act. That act provides that:

> the owner of a famous mark shall be entitled, subject to the principles of equity ... to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark.

15 U.S.C. § 1125(c)

Network Solutions does not dispute that the Academy's registered marks may constitute a "famous mark" within the contemplation of the Anti-dilution Act. Network Solutions instead counters the Academy's claim primarily by asserting that the function they perform in registering and cataloging domain names does not constitute a "commercial use" and thus they cannot be found liable of dilution under the Act.

This is a compelling argument. The Academy cites several cases in which defendants have been found liable of trademark dilution as a result of their use of certain domain names. *See, e.g., Panavision v. Toeppen,* 945 F.Supp. 1296 (C.D.Cal.1996); *Hasbro v. Internet Entertainment Group,* 1996 WL 84853

(W.D.Wa.1996); *Teletech Customer Care Mgmt. v. Tele–Tech Co.,* 977 F.Supp. 1407 (C.D.Cal.1997); *Cardservice Int'l v. McGee,* 950 F.Supp. 737, 741 (E.D.Va.1997). Each one of these cases, however, involves claims against the owner of a certain domain name who was using that domain name in commerce. None of the cases supports the Academy's contention that the mere registering of a domain name constitutes a use "in commerce."

Section 45 of the Lanham Act defines "use in commerce" as:

The bona fide use of a mark in the ordinary course of trade ... a mark shall be deemed to be in use in commerce—(1) on goods when; (a) it is placed in any manner on the goods or on their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, the documents associated with the goods or their sale, and (b) the goods are sold or transported in commerce, and (2) on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce....

15 U.S.C. § 1127.

There has been no allegation by the Academy which supports a finding by the Court that Network Solutions has directly used any of their protected marks "in commerce". The mere registration of a domain name does not constitute a commercial use. *Panavision v. Toeppen,* 945 F.Supp. at 1303. There is likewise no evidence that Network Solutions attaches the names to any goods or services that it sells. The argument that the domain names themselves are goods or services the sale of which may dilute the Academy's marks is not supported by sufficient evidence to lead this Court to find that such an argument would have a strong likelihood of success at trial. There has been no allegation that Network Solutions markets its registration service or the quality of its service by displaying or otherwise exploiting the Academy's marks. Without such a showing, the use in commerce requirement is not met. The Court therefore finds that the Academy has not shown a strong likelihood of success

on the merits with respect to their dilution claim.

The Academy also alleges contributory dilution, but provides the Court with no statute upon which such a claim may be based nor any case in which a party has been found liable of contributory dilution. The very fact that there is no precedent of success on the merits on a contributory dilution claim weighs strongly against the Court granting a preliminary injunction—which must be supported by a finding of a strong likelihood of success on the merits—on such a claim.

**2. State Claim**

The Academy also seeks relief under the California Business & Professions Code Section 14330 which provides as follows:

"Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark registered under this chapter ... shall be a ground for injunctive relief notwithstanding the absence of competition between the parties or the absence of confusion as to the source of the goods and services." Cal. Bus. & Prof.Code § 14330.

The Academy claims that Network Solutions should be enjoined under this statute because it "contributes to third parties' dilution through the licensing of infringing domain names." (*Motion* at p. 14) Nowhere does the Academy allege that such contributory dilution is actionable under California law. The Academy's state claim is tenuous at best. The Court finds that the Academy has not exhibited a strong probability of success on the merits on its state law dilution claim.

*B. Contributory and Direct Infringement*

The Academy next claims it is likely to succeed on its infringement claims.

**1. Contributory Infringement**

In order to establish contributory infringement, a plaintiff must show that the defendant had knowledge of infringing activity and induced, caused or materially contributed to the infringing conduct of another.

*Universal City Studios v. Sony Corp. of America,* 659 F.2d 963, 975 (9th Cir.1981). " To make such a showing, a plaintiff may either show (1) that the defendant intentionally induced another to infringe on a trademark or (2) that the defendant continued to supply a product knowing that the recipient was using the product to engage in trademark infringement." *Fonovisa v. Cherry Auction,* 76 F.3d 259, 264 (9th Cir.1996) (citing *Inwood Lab. v. Ives Lab.,* 456 U.S. 844, 853–54, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982)).

█ The Academy holds that Network Solutions is guilty of contributory infringement under the second theory because it registers domain names to individuals and companies who may participate in infringing activity. The Court finds that this claim is unlikely to be successful on the merits.

The Academy has not demonstrated that Network Solutions has the requisite level of knowledge or control to be held liable under this theory. In *Fonovisa,* 76 F.3d 259 (9th Cir.1996), one of the only cases to extend this theory of recovery beyond application to manufacturers and distributors of products, the Circuit Court held that a swapmeet operator could be guilty of contributory infringement when he had actual knowledge of infringing activities by participants in the swapmeet and continued to provide support services to the infringer. *Id.* The facts here do not mirror those in *Fonovisa.* In *Fonovisa,* the swapmeet owner was aware that goods were being sold on its property which violated copyright laws. The swapmeet grounds had been raided by the sheriff's department and infringing goods had been confiscated. Here, there has yet to be a determination as to whether or not the domain names at issue infringe the Lanham Act—therefore Network Solutions could not possibly have actual knowledge that the registered owners of the domain names at issue are involved in infringing activities. Additionally, Network Solutions has much less reason to be aware of the activities of its registrants than has a swapmeet owner. The swapmeet owner and its vendors share the same physical space. Network Solutions and its registrants have no physical contact and

no contact even in "cyberspace" following the initial registration. Thus, the knowledge of infringement requirement which is a prerequisite to a finding of contributory infringement has not been proven adequately to support a finding that such a claim is likely to be successful on the merits.

### 2. Direct Infringement Claim

█ The Academy makes a brief argument for its likely success on a claim of direct infringement under the Lanham Act. They submit that 15 U.S.C. § 1114(1)(a) prohibits the "use in commerce of any reproduction, counterfeit, copy or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services, on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). It is their contention that Network Solutions violates the statute when it registers as domain names, words which approximate marks registered by the Academy. In order to succeed on this claim, the Academy must prove that by issuing domain name registrations, Network Solutions has used the Academy's registered marks in connection with the sale, distribution or advertising of goods and services. *See Lockheed Martin Corp. v. Network Solutions,* 985 F.Supp. 949 (C.D.Cal. 1997) (order granting Defendant's Motion for Summary Judgment) (citing *Planned Parenthood Fed'n of America v. Bucci,* 42 U.S.P.Q .2d 1430, 1434 (S.D.N.Y.1997)). The Academy has not made a sufficient showing that such "commercial use" of the marks occurred.

### 3. State Claim

The Academy has not shown that it would be likely to succeed on it's state law claim for injunctive relief as a remedy for trademark infringement. It has not sufficiently alleged Network Solutions' contribution to potential confusion among consumers.

### C. Unfair Competition

For many of the same reasons discussed previously, it does not seem likely that the Academy's Unfair Competition cause of ac-

tion would meet with success on the merits. The Lanham Act, Section 43(a) forbids a person to:

> ... [A]ffix, apply or annex, or use in connection with any goods or services ... a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce ... shall be liable to a civil action by any person ... who believes that he is or is likely to be damaged by the use of such false description.

15 U.S.C. § 1125(a).

■ Once again, the Academy has not presented sufficient evidence to convince the Court that the act of registering a domain name constitutes the causing of "goods or services to enter into commerce." There is no allegation that Network Solutions has any knowledge of how a registrant will use a domain name. If a company uses a domain name to falsely represent that it is "the Academy" and sends electronic mail to organizations in which it claims to be the Academy and tries to sell official, trademarked Academy merchandise—the Academy may have a cause of action for unfair competition against that company. There appears, however, to be no ground for bringing such a cause of action against Network Solutions— an entity which is not involved in the commercial use of any of the domain names it registers.

For these same reasons, the Court finds that it is not probable that the California state law unfair competition cause of action would succeed on it's merits.

## II. Irreparable Injury

The Academy asserts that it will suffer irreparable injury if an injunction is not granted. It has, however, not convinced the Court that such injury will occur in a magnitude great enough to justify an injunction.

The Academy's main contention on this point is that irreparable harm is presumed where there has been a likelihood of success on the merits. *Dr. Seuss Enter. v. Penguin Books USA,* 109 F.3d 1394 (9th Cir.1997). This does little to advance their cause in light of the Court's finding that the Academy does not face a strong likelihood of success on the merits of its claims at trial. The only other injury claimed by Plaintiff is the inconvenience to the Academy of suing the registrants of domain names which infringe its trademarks directly. According to Plaintiff, this may require that it travel to far flung forums in order to litigate its claims. The Court finds that this inconvenience is not irreparable.

## III. Balance of Hardships and Public Interest

The hardship to Network Solutions of implementing a massive pre-screening process would drastically change the nature of their business. Network Solutions' evidence leads the Court to believe that such a change in the process would likely drive the cost of registration up and slow the process down. Moreover, there is no evidence that the pre-screening function the Academy anticipates Network Solutions performing would be a practicable solution to their infringement problems.

The Court finds that the balance of hardships does not favor the Academy nor would an injunction significantly advance the public interest.

## CONCLUSION:

For all of the above stated reasons, the Court DENIES the Academy's request for a preliminary injunction.

IT IS SO ORDERED.