**WASHINGTON SPEAKERS BUREAU, INC., Plaintiff,**

v.

**LEADING AUTHORITIES, INC., Defendant.**

**No. C.A. 98–634–A.**

United States District Court, E.D. Virginia, Alexandria Division.

May 19, 1999.

William H. Bode, James M. Ludwig, Daniel E. Cohen, Bode & Beckman, LLP, Washington, DC, for Plaintiff.

Stephen A. Horvath, Trichilo Bancroft McGavin Horvath & Judkins, PC, Fairfax, VA, for Defendant.

## ORDER

ELLIS, District Judge.

### I.

Final judgment in this trademark infringement suit ordered defendant Leading Authorities to (i) cease using and (ii) relinquish ownership of the domain names *www.washington-speakers.com; www.washingtonspeakers.com; www.washingtonspeakers.net;* and *www.washington-speakers.net* because these names infringed plaintiff's trademark, "Washington Speakers Bureau." *See Washington Speakers Bureau, Inc. v. Leading Auths., Inc.,* 33 F.Supp.2d 488 (E.D.Va.1999). Leading Authorities moved to stay the injunction pursuant to Rule 62(c), Fed.R.Civ.P., which motion was granted in part and denied in part. Specifically, the portion of the judgment relating to the use of the infringing domain names was not stayed; Leading Authorities was ordered to cease using those domain names immediately.[1] But a stay was granted as to that portion of the judgment mandating that Leading Authorities relinquish ownership of the domain names, because of a concern that the domain names could be lost to a third party if relinquished. *See Washington Speakers Bureau, Inc., v. Leading Auths., Inc.,* Memorandum Opinion and Order, C.A. No. 98–634, —— F.Supp.2d —— (April 15, 1999). At issue now is Washington Speakers Bureau's (WSB) motion to reconsider this stay.

---

1. Indeed, Leading Authorities had voluntarily discontinued use of the domain names by "turning them off" upon the initiation of this lawsuit. The names have not been "pointed to" a website since this time.

## II.

] A guiding principle underlying the April 15, 1999, Order was that by prevailing in this action, WSB had won the right to enjoin infringement, but had acquired no right of ownership over the four domain names. Nothing in trademark law requires that title to domain names that incorporate trademarks or portions of trademarks be provided to trademark holders. Instead, the law simply prevents others from making use of a company's trademarks in a manner likely to confuse the consuming public. As a result, WSB's victory in its infringement suit does not mean that Leading Authorities must transfer ownership of the names to WSB; it simply means that Leading Authorities must cease using the infringing domain names. In addition, it means that Leading Authorities must ultimately relinquish ownership of the names, for if Leading Authorities were permitted to retain registration of the names, even after it had been ordered to make no further use of them, it would be in a position to use this registration as a club to extort payment from WSB; this behavior, known as "cybersquatting," constitutes continued infringement of the mark. *See, e.g., Panavision Intl. v. Toeppen,* 141 F.3d 1316, 1325 (9th Cir.1998) (finding that when a domain name owner acts as a "spoiler," preventing others from doing business on the Internet under their trademarked names unless they pay his fee, this is a commercial use of the name). As a result, enforcement of the judgment requires Leading Authorities to return the domain names to the appropriate domain name registrar or registrars, at which point the names will be again available on a first-come, first-served basis to any interested takers.[2]

Since Leading Authorities is to return the names to the domain name registrar, not transfer them to WSB, enforcement of the judgment carries some risk that the domain names will thereafter be registered to a stranger to this lawsuit,[3] leaving Leading Authorities without the means to reclaim the names were it to succeed in its appeal. Put another way, requiring Leading Authorities to return the names to the proper registrar would create a risk that the "eggs could not be unscrambled" were Leading Authorities to prevail on appeal. This risk led to entry of a partial stay in this matter.[4]

 Nevertheless, WSB correctly points out that this is not the end of the analysis. As noted in the April 15, 1999, Order, four factors guide a district court's

---

2. As of April 1999, Network Solutions, Inc. (NSI), the company previously responsible for registering domain names ending in ".com," ".org," and ".net" to owners, no longer holds a monopoly on this service. In April, the Internet Corporation for Assigned Names and Numbers (ICANN) announced five companies, including America Online, which will compete with NSI as domain name registrars for a two-month test period, after which period NSI will be required to open the registration system and its database of domain names to all registrars approved by ICANN. *See* Mark Grossman & Brian Nelson, *Domain Names Are Now Big Business,* Legal Times, March 29, 1999, at 21.

3. This risk is magnified by the fact that one who registers a domain name with NSI is not required to perform a search to determine that the name does not infringe or dilute another's trademark; instead a registrant must merely represent that to the best of his or her knowledge, the name does not interfere with or infringe upon the rights of any third party. Nor does NSI determine the legality of any domain name registration. *See* Network Solutions, Inc., *Network Solutions Domain Name Dispute Policy* (visited May 18, 1999) <http://www.networksolutions. com/legal/dispute-policy.html>.

4. It now appears that this risk is likely small, since Leading Authorities may cooperate with WSB to ensure that the domain names, when returned to the registrar, are thereafter registered immediately to WSB. While Leading Authorities is not required to cooperate so, it is to be noted that Leading Authorities' self-interest lies in minimizing third parties' opportunities to appropriate the names, since if the names are registered to WSB, they remain within the control of parties to this lawsuit, and thus may be returned to Leading Authorities if its arguments are vindicated on appeal.

decision whether to issue a stay of a judgment pending appeal: (1) whether the stay applicant has made a strong showing that the appeal is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties to the appeal; and (4) where the public interest lies. *See Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987); *Long v. Robinson,* 432 F.2d 977, 979 (4th Cir.1970); *Odetics, Inc. v. Storage Tech. Corp.,* 14 F.Supp.2d 785, 797 (E.D.Va. 1998). Also noted in the April 15 Order is that Leading Authorities has failed to make a strong showing that the appeal is likely to succeed on the merits. *See Washington Speakers Bureau,* —— F.Supp.2d at ——. Nor did Leading Authorities demonstrate that its appeal raises a "substantial legal question." *Odetics,* 14 F.Supp.2d at 798. Herein lies the difficulty with the stay.

■ While "[a] stay movant need not prove at the district court that its chances of prevailing on appeal are greater than fifty percent," the movant must "[i]n any event ... show that its appeal raises at least a 'substantial legal question.'" *Id.* The four-factor test contemplates individualized judgments rather than the application of rigid rules, *see id.,* yet upon review of the precedent, it seems clear that at least in the usual case, a stay movant must demonstrate, at minimum, a substantial legal question to prevail in its motion. WSB's infringement case against Leading Authorities presented hotly contested questions. Yet these questions are, under applicable law, questions of fact. For instance, the appeal challenges the finding that Leading Authorities' choice of domain names created a likelihood of consumer confusion and thus infringed upon WSB's trademark; this likelihood of confusion inquiry is a primarily factual analysis, and the Fourth Circuit reviews such determinations under a "clearly erroneous" standard, overturning district court determinations only when there is no evidence in the record to support the district court's conclusion or when upon a survey of the record, the reviewing court is left with the firm and definite conviction that a mistake has been committed. *See Petro Stopping Ctrs. v. James River Petroleum, Inc.,* 130 F.3d 88, 91–92 (4th Cir.1997). Similarly, the "clearly erroneous" standard of review applies to Leading Authorities's challenge to the finding that "Washington Speakers Bureau" is a descriptive mark that has acquired secondary meaning and is thus protectible.[5] Leading Authorities fails to show either a substantial legal question or a likelihood of prevailing under the demanding "clearly erroneous" standard on these issues.

## III.

■ Given this failure to demonstrate a substantial legal question, and given that Leading Authorities has failed to show that it will suffer the type of truly compelling, severe, and irreparable injury absent a stay that might arguably permit it to succeed in its motion even despite this failure, it was error to stay the judgment pending appeal.

Accordingly, WSB's motion to reconsider is **GRANTED**. The previous Order of April 15, 1999, is **VACATED**, and Leading Authorities is **ORDERED** to cease using

---

5. *See, e.g., Pebble Beach Co. v. Tour 18 I Ltd.,* 155 F.3d 526, 537 (5th Cir.1998) ("The functionality, distinctiveness, or secondary meaning of a mark ... and the existence of a likelihood of confusion are questions of fact."); *RFE Indus., Inc. v. SPM Corp.,* 105 F.3d 923, 925 (4th Cir.1997) ("The controversy here ... centers on whether RFE's 'Popcorn' mark is suggestive ... or merely descriptive.... The district court's findings [on this issue] may be disturbed on appeal only if they are clearly erroneous."); *Boston Beer Co. v. Slesar Bros. Brewing Co.,* 9 F.3d 175, 180 (1st Cir.1993) ("Whether a term is generic, descriptive, or inherently distinctive is a question of fact [reveiwable] only for clear error.").

and relinquish ownership of the relevant domain names immediately.

It is further **ORDERED** that Leading Authorities shall give notice to WSB of the precise date on which it will relinquish the domain names to Network Solutions, Inc., or the appropriate domain name registrar, thus minimizing the risk that the names will be registered to a third party in the interim.

The Clerk is directed to forward copies of this Order to all counsel of record.