HQM, LTD., and Hatfield,
Inc., Plaintiffs,

v.

William B. HATFIELD, Defendant.

No. AW–99–2093.

United States District Court,
D. Maryland.

Dec. 2, 1999.

Bruce L. Marcus, Marcus & Bonsib, Greenbelt, MD., Laura Genovese Miller, Camille M. Miller, Woodcock, Washburn, Kurtz, Mackiewicz & Norris LLP, Philadelphia, PA for Plaintiffs HQM, Ltd. and Hatfield, Inc.,

A.J. Cooper, Camilla C. McKinney, Krystal A. Jordan, Cooper & Associates, Washington, D.C. for Defendant William B. Hatfield.

## MEMORANDUM OPINION

WILLIAMS, District Judge.

On July 14, 1999, Plaintiffs HQM, Ltd. and Hatfield, Inc. filed a lawsuit against Defendant William B. Hatfield. Plaintiffs' Complaint lists four causes of action: federal service mark infringement, federal unfair competition, common law unfair competition, and federal dilution. Plaintiffs' lawsuit centers on Mr. Hatfield's domain name HATFIELD.COM, which he allegedly registered with Network Solutions, Inc. ("NSI") in February 1995.

Presently before the Court is Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). A hearing was held in open court on November 3, 1999. For the reasons that follow, the Court will grant Defendant's Motion to Dismiss on all counts.

### I.

In deciding on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the Court must "accept the factual allegations in the Plaintiffs' complaint and must construe those facts in the light most favorable to the Plaintiffs." *Flood v. New Hanover County,* 125 F.3d 249, 251 (4th Cir.1997) *citing Estate Constr. Co. v. Miller & Smith Holding Co.,* 14 F.3d 213, 217–18 (4th Cir.1994).

The Court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *See Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 2944, 92 L.Ed.2d 209 (1986), *citing Briscoe v. LaHue,* 663 F.2d 713, 723 (7th Cir.1981), *aff'd on other grounds,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). As the Fourth Circuit has explained, "Were it otherwise, Rule 12(b)(6) would serve no function, for its purpose is to provide a defendant with a mechanism for testing the legal sufficiency of the complaint." *District 28, United Mine Workers of*

*America, Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085–86 (4th Cir.1979); *see also Randall v. United States*, 30 F.3d 518, 522 (4th Cir.1994) ("[W]e are not so bound by the plaintiffs legal conclusions, since the purpose of Rule 12(b)(6) is to test the legal sufficiency of the complaint.").

The Court may dismiss a complaint if it fails to state a claim upon which relief may be granted. *See* Fed. Rule of Civ.P. 12(b)(6), *cited in Randall v. United States*, 30 F.3d at 522. A motion to dismiss should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

■ While the Plaintiffs and the Defendant presented extraneous matters in their briefings, the Court can and will exercise its discretion to exclude them from consideration and decide this motion as a motion to dismiss. Plaintiffs' original attachments, however, are regarded as part of the Complaint. *See* Fed. Rule Civ.P. 10(c). The Fourth Circuit and courts in this district have also recognized an exception for written documents referred to in the complaint and relied upon by the plaintiff in bringing the civil action. *New Beckley Min. Corp. v. International Union, United Mine Workers of America*, 18 F.3d 1161, 1164 (4th Cir.1994); *citing Cortec Indus. v. Sum Holding, L.P.*, 949 F.2d 42, 47–48 (2d Cir.1991) *citing* Fed. Rule Civ.P. 10(c); *Biospherics, Inc. v. Forbes, Inc.*, 989 F.Supp. 748, 749 (D.Md.1997); *In re Medimmune, Inc. Securities Litigation*, 873 F.Supp. 953, 957 (D.Md.1995). In bringing

their civil action, Plaintiffs relied on letters they sent to Mr. Hatfield, was referring to these letters in the Complaint,[1] refer to them in their opposition brief, and presumably again in their proposed amended complaint. After Plaintiffs filed their opposition brief, Defendant attached Plaintiffs' letters to the reply brief Because Plaintiffs referenced and relied on these documents, the Court will consider them in deciding the motion to dismiss. All other matters are excluded, and the Court will decide Defendant's Rule 12(b)(6) motion as a matter of law.

**II.**

While Plaintiffs claim that Defendant infringed on their marks, the Court is not bound by Plaintiffs' legal conclusions. Instead, the Court must test the legal sufficiency of the Complaint by its factual allegations. The Court will begin with what Plaintiffs label as "William B. Hatfield's Infringing Activities."[2] This section of the Complaint alleges the following:

(1) William B. Hatfield registered the domain name HATFIELD.COM with Network Solutions, Inc., in February 1995;[3]

(2) "As a result of the infringing use of this domain name and activities associated therewith, by Defendant William B. Hatfield, customers of HQM may be confused ... thereby injuring HQM;"[4]

(3) "On information and belief, Defendant William B. Hatfield's primary purpose is to hold the domain name HATFIELD.COM hostage," never responding to letter inquiries sent by Plaintiffs about the domain name;[5]

---

**1.** *See* Plaintiffs' Opposition at 13 (citing Compl. ¶ 15 to allege letter-documents were sent to Defendant).

**2.** *See* Compl. at 4.

**3.** *See* Compl. ¶¶ 13 & 27.

**4.** *See* Compl. ¶ 14.

**5.** *See* Compl. ¶ 15.

Plaintiffs allege they sent letters to Defendant, which are attached to this opinion. Plaintiffs allegedly sent a letter to Mr. Hatfield under the letterhead of Woodcock, Washburn, Kurtz, Mackiewicz & Norris, LLP. That letter states in part that: "The registration and any use of HATFIELD.COM violates the trademark rights of Hatfield, Inc. by causing confusion among both the trade and purchasing public and dilutes the value of our client's HATFIELD trademark." *citing Campbell Soup*

(4) "HQM risks a substantial loss of good will by having its HATFIELD and HATFIELD and Design marks wrongly associated with [Defendant];"[6]

Elsewhere in the Complaint, the Plaintiffs add these factual allegations about Defendant:

(5) The domain name HATFIELD.COM is active for e-mail purposes;[7]

(6) "On information and belief" William B. Hatfield registered the domain name with "actual and constructive notice" of Plaintiffs' marks;[8]

(7) William B. Hatfield did not have the consent of Plaintiffs to "use its mark."[9]

The remaining factual allegations largely concern Plaintiffs' companies, their meat products, and the use and registration of their marks. Plaintiffs allege they own two marks. Their HATFIELD & Design mark is a "unique logo showing a picture of a pig's head with the word HATFIELD on its hat and under its head"; they have used this logo as a mark since August 1956 and registered it on April 16, 1968.[10] Plaintiffs have used their HATFIELD mark since October 9, 1946 and registered it on October 29, 1996.[11]

Co. v. Armour & Co., 81 F.Supp. 114, 120 (E.D.Pa.1948), aff'd 175 F.2d 795 (3rd Cir. 1949). The letter also cites huge investments in time and money in its mark, and states: "Under these circumstances, we request that you transfer ownership of the HATFIELD.COM domain name to Hatfield, Inc. and discontinue any and all use of the HATFIELD.COM. Our client is willing to pay all the costs associated with transferring this domain name." See Letter from Camille M. Miller, Woodcock, Washburn, Kurtz, Mackiewicz & Norris, LLP to William B. Hatfield (April 29, 1999). Another virtually identical letter was allegedly sent to Mr. Hatfield. See id. (Aug. 4, 1999).

Plaintiffs allege that they sent four such letters to Defendant and that Defendant never responded to them. For the purposes of this motion to dismiss, the Court accepts these factual allegations as true, and will consider them as facts alleged in support of their legal contentions.

6. See Compl. ¶ 16.

7. See Compl. ¶ 28.

As to their goods and services, Plaintiffs further allege that they have used their marks in connection with meat products.[12] Since 1946, Plaintiffs allege they have spent over $50 million advertising with these marks, and their marks have appeared prominently in print, trade literature and advertising, their web sites and web page.[13] Plaintiffs also allege that their marks are "distinctive," they "have achieved secondary meaning and significance in the minds of the relevant public," and their marks have become "well known and famous."[14] The remaining allegations are largely legal assertions or conclusions, or are redundant. Among their damage demands, the Plaintiffs request that the Court order "That William B. Hatfield be required to assign the domain name HATFIELD.COM to HQM, Ltd."[15]

### III.

To decide Defendant's Rule 12(b)(6) motion, the Court will now examine the legal sufficiency of the Complaint against its factual allegations. See Randall v. United States, 30 F.3d 518, 522 (4th Cir.1994).

8. See Compl. ¶ 27.

9. See Compl. ¶ 32.

10. See Compl. ¶ 6.

11. See Compl. ¶ 7.

12. Plaintiffs allege the application for the HATFIELD and Design mark covered the use of the mark in conjunction with "meat products namely, franks, party ham, polish (ham) boiled ham, boneless ham, scrapple, sausage, smoked hamette, smoked butt, lunch roll, spiced luncheon, ring bologna, minced bologna, olive loaf, head cheese, fresh liver pudding, lard shortening, and ground beef." See Compl. ¶ 20. Plaintiffs allege the application for the HATFIELD mark covered "meat products." See Compl. ¶ 29.

13. See Compl. ¶¶ 10 & 12.

14. See Compl. ¶ 44.

15. See Compl. at 10.

Plaintiffs have alleged four counts: federal service mark infringement, federal unfair competition, common law unfair competition, and federal dilution. The Court believes that Plaintiffs' Complaint fails to state a claim upon which relief may be granted.

### A.

■ Beginning with Count I, Plaintiffs' federal infringement claim, the relevant statute, 15 U.S.C.A. § 1114(1) [Lanham Act 32(1)], establishes liability for anyone who, without the consent of the registrant, "uses in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive...." 15 U.S.C.A. § 1114(1) [Lanham Act 32(1)], *cited in Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922 (4th Cir.1995). Plaintiffs fail to allege—even "on information and belief"—that Defendant uses their mark in connection with any "goods or services," much less in a way that would satisfy the likelihood of confusion test. Thus, Plaintiffs' Complaint fails as a matter of statutory law. Less there be any doubt as to what Plaintiffs' argument is, their Complaint states that their infringement claim is based on Mr. Hatfield's alleged registration of the domain name HATFIELD.COM and activating it for e-mail purposes, without Plaintiffs' authorization.[16]. Plaintiffs cite no caselaw to support

"infringement" based on the factual allegations in the Complaint. To the extent Plaintiffs' are collapsing their infringement claim into their dilution arguments, the Court believes they fail as a matter of law as well. *See* infra III.B.

■ For similar reasons, this Court must dismiss Plaintiffs' federal unfair competition claim under 15 U.S.C.A. § 1125(a) [Lanham Act § 43(a)], and Plaintiffs' common law unfair competition claim.[17] The federal unfair competition act creates liability for:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ... shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

*See* 15 U.S.C.A. § 1125(a) [Lanham Act § 43(a)]. While the provisions under 15 U.S.C.A. § 1125(a) are broader in scope than 15 U.S.C.A. § 1114(a) [Lanham Act 32(1)], Plaintiffs still fail to plead factual allegations sufficient to meet the statutory

---

16. As Plaintiffs' Complaint asserts:
   Defendant William B. Hatfield has infringed [Plaintiffs] mark in interstate commerce and in this district through its registration of the domain name HATFIELD.COM and activating this site for the purposes of e-mail. The unauthorized use of the HATFIELD mark by Defendant William B. Hatfield constitutes infringement of [Plaintiffs'] registered marks....
   *See* Compl. ¶ 29.

17. Common law infringement and unfair competition are generally analyzed together

with federal Lanham Act claims, because Maryland common law on these issues nearly always tracks the federal Lanham Act. *See National Federation of the Blind, Inc. v. Loompanics Enterprises, Inc.*, 936 F.Supp. 1232, 1236 n. 4 (D.Md.1996), *citing Perini Corp. v. Perini Const., Inc.*, 715 F.Supp. 719, 721 (D.Md.1989), *rev'd on other grounds* 915 F.2d 121 (4th Cir.1990). Given the parties did not argue any relevant distinctions between state and federal law, the Court will consider these claims together.

elements for this cause of action.[18] Instead, Plaintiffs point again to their allegation that Mr. Hatfield registered the domain name HATFIELD.COM and activated it for e-mail purposes, without Plaintiffs' consent.[19] Plaintiffs cite no caselaw that would support their legal theory of unfair competition based on these allegations. To the extent Plaintiffs are collapsing their unfair competition claims into their dilution arguments, the Court believes they fail as a matter of law as well. *See* infra III.B.

Finally, Plaintiffs have alleged that Defendant has violated the Federal Dilution Act of 1995, codified as 15 U.S.C.A. § 1125(c) ("the federal dilution statute"). The federal dilution statute reads in relevant part:

> (1) The owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection.

*See* 15 U.S.C.A. § 1125(c).

The federal dilution statute differs from the federal infringement and unfair competition statutes, in that under the federal dilution statute the owner of a "famous" mark can seek relief for the "commercial use" of the famous mark in a way that "causes dilution of the distinctive quality of the mark." Construing the Complaint liberally, the Court assumes the Complaint pleads factual allegations necessary to satisfy the minimal pleading requirements that Plaintiffs' marks are "famous" and "distinctive."

The Court believes, however, that the Complaint fails to allege facts sufficient to plead the statutory elements of "commercial use" and "dilution." To support their dilution claim, Plaintiffs again cite Mr. Hatfield's registration and activation for e-mail of the domain name HATFIELD.COM without their authorization, allege "on information and belief" that Defendant's "primary purpose is to hold hostage" the domain name HATFIELD.COM, and cites Mr. Hatfield's alleged failure to respond to letters sent by Plaintiffs. Plaintiffs cite two cases in support of their dilution claim, *Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316 (9th Cir.1998) and *Intermatic, Inc. v. Toeppen,* 947 F.Supp. 1227 (N.D.Ill.1996). Plaintiffs also try to distinguish a case raised by Defendant, *see Avery Dennison Corp. v. Sumpton,* 189 F.3d 868 (9th Cir.1999). Because Plaintiffs' cases fall within a general body of caselaw concerning domain names and trademarks, the Court will consider this claim in detail.[20]

---

**18.** While Plaintiffs occasionally refer to "goods and services" in their federal unfair competition claim, this appears to be nothing more than "cutting-and-pasting" of the statute. Plaintiffs cite no "goods and services" under the "Infringing Activities of William B. Hatfield," they cite no "goods and services" in the "factual background" of their opposition brief, and they cite no "goods and services" in their trademark infringement claim. Indeed, the only facts which Plaintiffs have even minimally articulated is, again, that William B. Hatfield registered the domain name HATFIELD.COM and activated it for e-mail purposes. This is either cutting-and-pasting of the statute by Plaintiffs' counsel with no factual allegations to make, or a failure to articulate its factual allegations on this particular claim. Either way, the Court believes Plaintiffs' pleadings on this claim fail to meet even the minimal notice-pleading standard of setting "forth the circumstances, occurrences, and events which, if proven, would entitle the claimant to the relief sought." *National Federation of Blind, Inc. v. Loompanics Enterprises,* 936 F.Supp. 1232, 1236 n. 4 (D.Md.1996) citing *Gilbane Bldg. Co. v. Federal Reserve Bank of Richmond,* 80 F.3d 895, 900 (4th Cir.1996). The Court will consider whether it can be cured by giving leave to amend the Complaint, *see* infra IV.

**19.** *See* Compl. ¶ 32.

**20.** Again, to the extent Plaintiffs are collapsing their infringement and unfair competition claims into their dilution arguments, the Court's reasoning in III.B. applies to those claims as well.

## B.

Plaintiffs have cited three cases to support their argument on dilution. Each of these cases falls within a body of caselaw concerning domain names and trademarks. *See Lockheed Martin Corp. v. Network Solutions, Inc.,* 194 F.3d 980 (9th Cir. 1999); *Avery Dennison Corp. v. Sumpton,* 189 F.3d 868 (9th Cir.1999); *Panavision International L.P. v. Toeppen,* 141 F.3d 1316 (9th Cir.1998); *Washington Speakers Bureau, Inc. v. Leading Authorities, Inc.,* 49 F.Supp.2d 496 (E.D.Va.1999); *Watts v. Network Solutions, Inc.,* 1999 WL 778589 (S.D.Ind. May 7, 1999); *Hasbro, Inc. v. Clue Computing, Inc.,* 1999 WL 711429 (D.Mass. Sept.2, 1999); *Juno Online Services v. Juno Lighting, Inc.,* 979 F.Supp. 684 (N.D.Ill.1997); *Academy of Motion Picture Arts & Sciences v. Network Solutions, Inc.,* 989 F.Supp. 1276, 1997 WL 810472 (C.D.Cal.Dec.22, 1997); *Intermatic, Inc. v. Toeppen,* 947 F.Supp. 1227 (N.D.Ill. 1996).

It is clear to the Court that Plaintiffs' factual allegations do not resemble any of the so-called "cyber-squatting" cases. At the outset, it is instructive to note what Plaintiffs have not alleged—even "upon information and belief"—in their Complaint. Plaintiffs do not allege Mr. Hatfield has registered multiple domain names. Plaintiffs do not allege Mr. Hatfield has registered as domain names multiple variations of their mark. Plaintiffs do not allege Mr. Hatfield has ever sold a domain name. Plaintiffs do not allege Mr. Hatfield operates a business of marketing domain names. Plaintiffs do not allege Mr. Hatfield has hyperlinked his domain name to any website of Plaintiffs. Plaintiffs do not allege Mr. Hatfield has a website.

It is also important to note at the outset what Plaintiffs may not accomplish through their lawsuit. To open their briefing on dilution, Plaintiffs state that "[d]ilution causes of action tread very close to granting 'rights in gross' in a trademark." *See* Plaintiffs' Opp. at 18. If Plaintiffs cite this to support their dilution claim (if not

explicitly, then implicitly by their arguments), it is a revealing assertion. The Fourth Circuit has explicitly cited this as a danger in interpreting dilution too broadly. *See Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Utah Div. of Travel,* 170 F.3d 449 (4th Cir.1999). In a comprehensive opinion, the Fourth Circuit traced the history of dilution theory and of the current federal dilution statute. *See id.* The Fourth Circuit rejected the "radical property-right-in-gross model" in interpreting the federal dilution statute, holding:

> [W]e simply cannot believe that, as a general proposition, Congress could have intended, without making its intention to do so perfectly clear, to create property rights in gross, unlimited in time (via injunction), even in "famous" trademarks. Had that been the intention, it is one easily and simply expressed by merely proscribing use of any substantially replicating junior mark.

*See id.* at 459. The Court believes that to accept Plaintiffs' legal arguments based on the facts alleged in this Complaint would amount to creating a property-rights-in-gross model of dilution. The Court believes Plaintiffs have also failed as a matter of law to allege facts necessary to plead both the "commercial use" and "dilution" elements of the federal dilution statute. The Court will consider these elements in turn, keeping in mind the Fourth Circuit's warning against creating property rights in gross through the federal dilution statute.

### 1. *"Commercial use"*

Plaintiffs' argument on "commercial use" is simple once the waters clear. Plaintiffs first offer up a red herring: Plaintiffs state that "most courts find that simple use of the Internet is sufficient to meet the 'in commerce' requirement of the Dilution Act," *see* Plaintiffs' Opp. at 20, *citing* Defendant's Motion to Dismiss at 27. However, the Defendant never disput-

ed that the Plaintiffs had plead the "in commerce" element, which is a jurisdictional provision. *See* Defendant's Motion to Dismiss at 27; 15 U.S.C. § 1127.

■ Plaintiffs next point to Defendant's alleged registration HATFIELD.COM under the .com designation. Plaintiffs argue that the .com use is "for commercial businesses" and imply that this satisfies the "commercial use" requirement. The Court rejects this proposition for .the following reasons.

First, nearly every Court to have decided whether mere registration or activation of a domain name constitutes "commercial use" has rejected such arguments, even when the domain name or names included the .com designation. *See Lockheed Martin Corp. v. Network Solutions, Inc.*, 985 F.Supp. 949 (C.D.Cal.1997) ("[R]egistration of a domain name, without more, does not constitute use of the name as a trademark."), *aff'd, Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980 (9th Cir.1999); *Panavision International, L.P. v. Toeppen*, 945 F.Supp. 1296 (C.D.Cal. 1996) ("Registration of a trade[mark]˙ as˙ a domain name, without more, is not a commercial use of the trademark and therefore is not within the prohibitions of the Act."), *aff'd, Panavision International L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998); *Academy of Motion Picture Arts & Sciences v. Network Solutions, Inc.*, 989 F.Supp. 1276, 1997 WL 810472 (C.D.Cal. Dec.22, 1997) (holding mere registration of a domain name does not constitute commercial use); *Bally Total Fitness Holding Corp. v. Faber*, 29 F.Supp.2d 1161 (C.D.Ca. 1998) (holding mere use of another's mark on Internet is insufficient to constitute commercial use); *Juno Online Services v. Juno Lighting, Inc.*, 979 F.Supp. 684 (N.D.Ill.1997) (holding reservation of domain name without a website does not constitute infringement under Lanham Act § 43(a)).

■ In support of their argument on the .com designation, Plaintiffs rely on dicta in *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868 (9th Cir.1999), *rev'ing* 999 F.Supp. 1337 (C.D.Cal.1998). In Avery, the Ninth Circuit held that the Defendants' business of registering and licensing common surnames did not constitute "commercial use." Plaintiffs, however, cite the discussion in *Avery* of the differences between ˙registering under the net and the .com designations, to argue that the latter constitutes commercial use and dilution. The Court believes that Plaintiffs read far too much into these statements. The Court also believes that better reasoning on the .com designation is found in *Intermatic Inc. v. Toeppen*, 947 F.Supp. 1227 (N.D.Ill.1996). In that decision, which postdated Defendant's alleged registration by over a year, the court held:

> The use of the first level domain designation ".com" does not in and of itself constitute a commercial use. The Internet is constantly changing and evolving. Currently the ".com" designation is the only one available for both commercial and private use. In the future, perhaps other first level domain designation will be available solely for private or commercial uses. However, the Court is not here to set policy guidelines for the Internet, but rather must apply the law to the Internet as it exists today. Therefore, the Court holds that the .com designation alone does not establish com- ˙ mercial use.

*See Intermatic Inc. v. Toeppen*, 947 F.Supp. at 1239.

For similar reasons, the Court holds that under the facts alleged in this Complaint, the .com designation does not by itself constitute commercial use. To hold otherwise would create an immediate and indefinite monopoly to all famous marks holders on the Internet, by which they could lay claim to all .com domain names which are arguably "the same" as their mark. The Court may not create such property rights-in-gross as a matter of dilution law. *See Ringling Bros.-Barnum*, 170 F.3d 449 (4th Cir.1999). Moreover, to

do so would interject the Court as a policy-maker for domain names and the Internet, at a time when they are rapidly evolving. *Intermatic Inc.,* 947 F.Supp. 1227 (N.D.Ill. 1996); *Avery Dennison,* 189 F.3d 868 (9th Cir.1999). This is a Court of limited jurisdiction. The Court must make its decision based on the federal trademark laws as they exist today; the Court may not distort the law to satisfy a mark holder's desires. *Cf. Washington Speakers Bureau, Inc. v. Leading Authorities, Inc.,* 49 F.Supp.2d 496 (1999) ("Nothing in trademark law requires that title to domain names that incorporate trademarks or portions of trademarks be provided to trademark holders.").

■ The Court will also consider Plaintiffs' allegation that Defendant's purpose is to "hold . . . hostage" the domain name as an additional allegation on "commercial use." Plaintiffs cite two cases in their support, both of which involved the same defendant. *See Panavision International L.P. v. Toeppen,* 141 F.3d 1316 (9th Cir. 1998); *Intermatic Inc. v. Toeppen,* 947 F.Supp. 1227 (N.D.Ill.1996).

A careful review of these cases, however, points out clear differences between the facts of the *Toeppen* cases and Plaintiffs' own factual allegations against William B. Hatfield. In the *Toeppen* cases, the Defendant, Dennis Toeppen, registered hundreds of domain names of company marks including multiple variations of the same mark—few, if any, of which had a conceivable connection to Toeppen's own name. When contacted by the mark holder, Toeppen immediately offered to sell the domain name and essentially threatened to acquire more domain names. In contrast, Plaintiffs do not allege—even on "information and belief"—that Mr. Hatfield registered hundreds of domain names, but only HATFIELD.COM. Nor would it be within the particular knowledge of the Defendant whether the Defendant has registered multiple domain names similar to HATFIELD. In addition, according to Plaintiffs' own Complaint, Mr. Hatfield *never*

responded to any of Plaintiffs' letter inquiries much less offer to sell or arbitrage his domain name.

To summarize, the Court does not believe that simply registering and activating a domain name under the .com designation, and then failing to respond to letters from a mark holder constitutes "commercial use." The Court finds, therefore, that Plaintiffs' Complaint fails to allege "commercial use" as required by the statute.

### 2. *"Dilution"*

■ The Court also believes that Plaintiffs' Complaint fails to allege "dilution" as a matter of law. The Fourth Circuit has held that "dilution" might result either from "uses that blur the distinctiveness of [a famous] mark or [that] tarnish or disparage it." *Ringling Bros.-Barnum,* 170 F.3d 449, 452 *citing* H.R.Rep. No. 104–374, at 2 (1995), U.S.Code Cong. & Admin. News at 1029, 1029. Plaintiffs offer no factual allegations that would support a traditional theory of dilution by "blurring" or "tarnishment." Instead, Plaintiffs rely on a relatively novel theory of "blurring" which has been recognized by some courts. Plaintiffs speculate that individuals searching for Hatfield, Inc. products on the Internet "are likely to begin a search using a TLD of <.com>. When they do not uncover Hatfield's goods under <Hatfield.com>, they are likely to mistakenly believe that Hatfield does not have a web site." *See* Plaintiffs' Opp. at 21. Plaintiffs cite the *Toeppen* cases on their behalf, *Panavision,* 141 F.3d 1316 and *Intermatic,* 947 F.Supp. 1227. These cases theorize that dilution may occur because customers might fail to continue to search for the mark holder's website, and this diminishes "the capacity of the marks to identify and distinguish the mark holder's goods and services on the Internet." *See Panavision,* 141 F.3d at 1327.

Another federal court has rejected such theories. In *Hasbro v. Clue Computing Inc.,* 66 F.Supp.2d 117, 124–25 (D.Mass. 1999), the court noted that trademark law

has always required reasonableness on the part of consumers. The court held that while the need to search for a mark holder's site "may rise to the level of inconvenience," this inconvenience was not cognizable. *Hasbro*, 66 F.Supp.2d at 124–25.

■ The Court believes that Plaintiffs have failed to state a cognizable claim on dilution. First, the Fourth Circuit has held that for dilution by blurring to occur, plaintiffs must show more than an "instinctive mental association" and the "blurring" must go "beyond mere recognition of a visual similarity of the two marks . . . ." *See Ringling Bros.*, 170 F.3d at 453. Instead, Plaintiffs must show: (1) a sufficient similarity of marks to evoke in consumers a mental association of the two that (2) causes (3) actual harm to the senior marks' economic value as a product-identifying and advertising agent. *See Ringling Bros.*, 170 F.3d at 453. Plaintiffs' Complaint does not allege that they have suffered actual harm, only that it is "likely" that they will. However, even assuming they could allege facts (and accepting them as true) that some of their customers gave up searching for their website after reaching Defendant's domain name, the Court believes this would fail to satisfy the dilution element.

First, the Court believes that Plaintiffs' argument treads dangerously close to establishing a property right-in-gross in cyberspace. *See Ringling Bros.-Barnum & Bailey, Inc. v. Utah Division of Travel Development*, 170 F.3d 449 (1999); *cf. Playboy Enterprises, Inc. v. Netscape Communications Corp.*, 55 F.Supp.2d 1070 (C.D.Ca.1999) ("Adoption of plaintiff's tarnishment would secure near-monopoly control of the placement of plaintiff's marks and the associated goods and services on the Internet . . ."). Taken to its logical end, famous mark holders could bring lawsuits against every holder of a .corn domain name which is arguably "the same" as their mark, so that no Internet user would ever give up searching for their websites. Plaintiffs' prospective view of Internet users, even if true for some, would also fail as a matter of law to meet the reasonableness requirement necessary to form a cognizable claim. *See Hasbro*, 66 F.Supp.2d at 124. Finally, considering the Fourth Circuit has incorporated "commercial use" into the dilution element, the Plaintiffs have also failed to allege "a causal connection between that harm and the *'commercial use'* of a replicating junior mark." *Ringling Bros.*, 170 F.3d at 449 (emphasis added).

## IV.

■ This does not end the Court's analysis. The Court must also consider whether the Plaintiffs could cure the defects in their Complaint by amending it. While Federal Rule of Civil Procedure 15(a) states that leave to amend a pleading "shall be freely given," the Court need not grant leave when the proposed "amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat Foods*, 785 F.2d 503 (4th Cir.1986) citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Because the Court believes the proposed amendments would be futile, the Court does not need to decide on the other reasons. The Court believes that Plaintiffs' Complaint is fatally defective.

At oral arguments, Plaintiffs' counsel represented that if they had included all of the elements of their factual allegations, the Complaint "would be long indeed." Plaintiffs also offered to amend their Complaint. However, in response to the Court's inquiry about their proposed amendments, Plaintiffs essentially could add only a couple of new allegations: Plaintiffs' allege that they *"now* know" of e-mail use at Defendant's domain address, and Plaintiffs could also presumably allege that Mr. Hatfield never responded to

phone calls either.[21] The Court believes these meager amendments would fail to cure the defects in the Complaint and that it could still "not withstand a motion to dismiss." *Perkins v. United States,* 55 F.3d 910, 917 (4th Cir.1995); *see New Beckley Mining Corp. v. International Union, United Mine Workers,* 18 F.3d 1161, 1164 ("The proposed amendment[s] would not have corrected the fundamental defect in the complaint.").

The Court also notes this: at the time Plaintiffs filed their Complaint, all Plaintiffs really knew about William B. Hatfield's actions was that he registered the domain name HATFIELD.COM in February 1995 and activated it for e-mail, and did not respond to their inquiries seeking transfer of the domain name. Indeed, the Court posed a hypothetical case to Plaintiffs' counsel: should an individual who registers a .com domain name similar to a mark and then chooses not to respond to the mark holder, be brought into a court of law to defend him or herself? Plaintiffs' counsel argued the domain name would have to be "the same" but otherwise conceded their lawsuit was no different.

■ At oral arguments Plaintiffs' counsel also stated that "once we get into discovery, we may well find" something additionally to allege. This is echoed in their Opposition as well, in which Plaintiffs state: "The conduct complained adequate-ly notified [William B. Hatfield] of [Plaintiffs'] claims *so that he can respond and specify all the allegations necessary* . for the claims ... and ... *to allow the court to conclude that [Plaintiff] has a legal right to relief.*" Plaintiffs' Opp. at 5 (emphasis added).

This appears to the Court to be precisely the kind of "fishing expedition" which the Fourth Circuit has warned against. *See Van Arsdale v. Clemo,* 825 F.2d 794, 797 (4th Cir.1987). All Plaintiffs can factually allege about Mr. Hatfield himself is that he registered and activated a single domain name, and then did not respond to inquiries demanding he transfer it. Plaintiffs' conclusory assertion about Mr. Hatfield's bad faith concerning his domain name is simply insufficient to proceed on so few factual allegations. *See Marker v. Union Fidelity,* 125 F.R.D. 121, 125 (M.D.N.C.1989) ("Conclusory claims of bad faith may not be the bases for conducting marginally relevant discovery which ... amount to nothing more than an out of season fishing expedition.").

If the Court were to allow this lawsuit to proceed on so few factual allegations, it would create what amounts to per se dilution and open up every holder of a domain name which is "the same" as a "famous mark" to litigation. To paraphrase:

("The public policy of favoring and encouraging settlement makes necessary the inadmissibility of settlement negotiations in order to foster frank discussions."). Third, even if Plaintiffs could bootstrap this allegation onto their almost nonexistent allegations of "commercial use," the Court does not believe it would cure Plaintiffs' Complaint. The cases which Plaintiffs rely on involved commercial enterprises in the business of registering and selling domain names. In contrast, Plaintiffs' allegation concerns one telephone statement by an attorney, more than four years after the Defendant registered the domain name, after the Defendant never responded to their inquiries, and after Plaintiffs filed a lawsuit against him. Based on the specific allegations that are before this Court in this case, the Court does not believe these allegations could satisfy the statutory element of "commercial use."

21. Plaintiffs also allege, for the first time in their October 12, 1999 opposition brief, that in a subsequent telephone call between Plaintiffs' local counsel and Defendant's counsel, the latter stated that the Defendant was willing to sell the domain name. Defendant's counsel vigorously denied this. However, even accepting the allegation as true, this would not cure the Complaint. First, there is no allegation the alleged statement was even authorized by the Defendant. Second, Federal Rule of Evidence 408 generally bars the Court from considering settlement discussions between attorneys once a lawsuit has commenced, even if they are relevant. *See Sanger v. Reno,* 966 F.Supp. 151 (S.D.N.Y.1997) (striking exhibits in plaintiffs opposition to motion to dismiss because they were evidence of offers to compromise); *Fiberglass Insulators v. Dupuy,* 856 F.2d 652 (4th Cir.1988)

To permit a plaintiff, on such a skimpy foundation, to drag a defendant past the pleading threshold would be to invite litigation by hunch and to open [holders of domain names similar to marks]—just because they are [holders of domain names similar to marks]—to the most unrestrained of fishing expeditions. We decline to impose such an onerous burden.

*Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir.1988). Given Plaintiffs' lack of factual allegations, the Court believes it would be improper in this case as well.

## V.

For the reasons stated above, the Court will grant Defendant's Motion to Dismiss on all counts. Pursuant to Local Rule 109.2, the parties are directed to submit materials addressing attorney's fees and costs within 14 days of entry of this opinion. An Order consistent with this Memorandum Opinion will follow.