**LOCKHEED MARTIN CORPORA-TION, Plaintiff–Counter–De-fendant–Appellant,**

v.

**NETWORK SOLUTIONS, INC., Defendant–Counter–Claimant–Appellee.**

No. 97–56734.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 8, 1999.

Filed Oct. 25, 1999

David W. Quinto, Quinn Emanuel Urquhart Oliver & Hedges, Los Angeles, California, for the plaintiff-counter-defendant-appellant.

Ronald L. Johnston, Suzanne V. Wilson, Blanc Williams Johnston & Kronstadt, Los Angeles, California, for the defendant-counter-claimant-appellee.

Before: NELSON, REINHARDT, and TROTT, Circuit Judges.

TROTT, Circuit Judge:

Plaintiff Lockheed Martin Corp. ("Lockheed") appeals summary judgment in favor of Defendant Network Solutions, Inc. ("NSI") on Lockheed's action for trademark infringement, unfair competition, dilution, and contributory infringement under the Lanham Trademark Act of 1946, 15 U.S.C. §§ 1051–1127 (1994 & Supp. I 1995), as amended (the "Lanham Act"). The district court published its decision granting summary judgment to NSI and refusing to grant Lockheed's motion for leave to amend its complaint. 985 F.Supp. 949 (C.D.Cal.1997). Lockheed contends that (1) genuine issues of material fact remain on its contributory infringement claim, (2) the district court erred in holding that 15 U.S.C. § 1114(2) did not create an independent basis for liability, and (3) the district court should have permitted Lockheed to amend the complaint to add a cause of action for contributory dilution. We have jurisdiction under 28 U.S.C. § 1291 (1994), and we affirm the judgment of the district court.

**I**

This appeal concerns the NSI registration scheme for domain-name combinations, which we discussed in our recent *Avery Dennison Corp. v. Sumpton,* 189 F.3d 868 (9th Cir.1999), decision. An interested reader may wish to review the district court's in-depth discussion of the Internet technology that forms the basis of this cause of action. 985 F.Supp. at 951–53.

When a third party seeks to maintain an Internet web site, that party must reserve a location, called an Internet Protocol ("IP") Address, and do the necessary programming. When an Internet user accesses the third party's web site, the user

enters the domain-name combination that corresponds to the IP Address and is routed to the host computer. An industry of surrogate hosts has developed, where an Internet Service Provider licenses space on its computers to a third-party web-site operator, permitting the operator to maintain a web site without keeping his or her computer continually connected to the Internet. The Internet Service Providers do not provide the translation service from an entered domain-name combination to the appropriate IP Address. A separate organization has the responsibility to perform the translation function.

**A**

At all relevant times, NSI was the sole National Science Foundation contractor in charge of registering domain-name combinations for the top-level domains .gov, .edu, .com, .org, and .net. (For clarity, we set off Internet-related character strings with the caret symbols (" ").) After registration, NSI entered the combination and the corresponding IP Address in its database, permitting automatic translation when an Internet user entered a domain-name combination. NSI is no longer the exclusive registrar. Since oral argument on this appeal, a new competitive scheme has been implemented. *See* Jeri Clausing, *3–Week Delay in Opening Up Internet Name Registration*, N.Y. Times, June 28, 1999, at C1.

When registering with NSI to receive a domain-name combination, an applicant submits NSI's "template" electronically over the Internet. On approval, NSI puts the domain-name combination in its database in conjunction with the correct IP Address. NSI then routes Internet users who enter a certain domain-name combination to the registrant's computer. At the time of argument on this appeal, NSI was receiving approximately 130,000 registrations per month, although evidence indicates that the number of monthly registrations has been increasing steadily and is possibly much larger today. Ninety per-

cent of templates are processed electronically, and the entire registration process for each application requires between a few minutes and a few hours. Ten percent of the time, an employee of NSI reviews the application. Human intervention might occur because of an error in filling out the form or because the applied-for domain name includes a "prohibited" character string—such as specific variations on the words Olympic, Red Cross, or NASA, and certain "obscene" words. NSI also performs a conflict check on all applications, which compares an application to other registered domain-name combinations. However, NSI does not consult third parties during the registration process, check for a registrant's right to use a particular word in a domain-name combination, or monitor the use of a combination once registered. NSI is also not an Internet Service Provider. It performs none of the "hosting" functions for a web site.

NSI does maintain a post-registration dispute-resolution procedure. Anyone who feels that his or her rights are violated by the domain-name combination maintained by a registrant can submit a certified copy of a trademark registration to NSI. NSI then requires the registrant to obtain a declaratory judgment of the right to maintain the domain-name combination. If the registrant fails to do so, its registration is terminated.

**B**

Lockheed owns and operates "The Skunk Works," an aircraft design and construction laboratory. Since 1943, The Skunk Works has developed prototypes of this country's first jet fighter, the U–2 and SR–71 spy planes, and the F–117 and F–22 fighter planes. The Skunk Works is currently involved in designing a possible replacement for the space shuttle. "Skunk Works" is a registered and incontestable service mark.

## II

Third parties, not involved in this litigation, have registered domain-name combinations with NSI which are variations on the phrase "skunk works." These include: <skunkworks.com>, <skunkworks.net>, <skunkwrks.com>, <skunkwerks.com>, <skunkworx.com>, <theskunkworks.com>, <skunkworks1.com>, <skunkworks.org>, <skunkwear.com>, <the-skunkwerks.com>, <skunkwurks.com>, and <theencryptedskunkworks.com>. Lockheed alleges that many of these registrations infringe and dilute its "Skunk Works" service mark.

Lockheed sent two letters, on May 7 and June 18, 1996, bringing the <skunkworks.com> and <skunkworks.net> registrations to NSI's attention. Lockheed's letters informed NSI of its belief that the third-party registrants were infringing or diluting Lockheed's service mark. Lockheed requested that NSI cancel the allegedly offending registrations. Lockheed also requested that NSI cease registering domain-name combinations that included "Skunk Works" or variations on the phrase and report to Lockheed all such domain-name combinations contained in its registry. NSI took no action on Lockheed's requests, informing Lockheed by letter that Lockheed had failed to comply with the terms of NSI's dispute resolution policy. Due to Lockheed's dealings with the third-party registrants, <skunkworks.com> and <skunkworks.net> ceased being used, but NSI did not immediately cancel the registrations and later permitted a new registrant to register <skunkworks.com>.

Lockheed sued NSI on October 22, 1996, claiming contributory service mark infringement, infringement, unfair competition, and service mark dilution, all in violation of the Lanham Act, and also seeking declaratory relief. The complaint alleged that four specific domain-name registrations infringed or diluted Lockheed's "Skunk Works" service mark. The parties stipulated to April 1, 1997, as the cut-off date for motions to amend the pleadings. Lockheed later proposed, over NSI's objection, that the cutoff date be moved to July 7, 1997. NSI moved for summary judgment. On August 19, 1997, Lockheed moved to amend its complaint to add a cause of action for contributory dilution and to allege several additional domain-name combinations registered with NSI. The district court denied the motion to amend and granted summary judgment to NSI.

## III

We review the district court's grant of summary judgment de novo. *Margolis v. Ryan,* 140 F.3d 850, 852 (9th Cir.1998). Viewing the evidence in the light most favorable to the non-moving party, summary judgment is appropriate if no genuine issues of material fact remain and the non-moving party is entitled to judgment as a matter of law. *See id.* We review for an abuse of discretion the district court's decision denying a motion to amend a complaint. *Griggs v. Pace Am. Group, Inc.,* 170 F.3d 877, 879 (9th Cir.1999).

## IV

■ Contributory infringement occurs when the defendant either intentionally induces a third party to infringe the plaintiff's mark or supplies a product to a third party with actual or constructive knowledge that the product is being used to infringe the service mark. *Inwood Lab., Inc. v. Ives Lab., Inc.,* 456 U.S. 844, 853–54, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982). Lockheed alleges only the latter basis for contributory infringement liability and therefore must prove that NSI supplies a product to third parties with actual or constructive knowledge that its product is being used to infringe "Skunk Works." *Id.* at 854, 102 S.Ct. 2182.

The district court assumed for purposes of summary judgment that third parties were infringing Lockheed's "Skunk Works" service mark, and NSI does not

ask us to affirm on the alternate ground that no genuine issue of material fact exists as to infringement. We are thus left to consider two issues on Lockheed's contributory infringement cause of action: (1) whether NSI supplied a product to third parties and (2) whether NSI had actual or constructive knowledge of any infringement. Because we accept the district court's excellent analysis on the first question, *see* 985 F.Supp. at 960–62, we affirm summary judgment without reaching the second.

**A**

Under the plain language of the *Inwood Lab.* formulation, to be liable for contributory infringement, NSI must supply a "product" to a third party with which the third party infringes Lockheed's service mark. 456 U.S. at 854, 102 S.Ct. 2182. In *Inwood Lab.*, the Supreme Court considered an action against a manufacturer of generic pharmaceuticals. *Id.* at 847, 102 S.Ct. 2182. Non-party pharmacists packaged the defendant's less-expensive generic pills, but labeled them with the plaintiff's brand name. *Id.* at 850, 102 S.Ct. 2182. The plaintiff stated a cause of action for contributory infringement by alleging that the defendant "continued to supply [the product] to pharmacists whom the petitioners knew were mislabeling generic drugs." *Id.* at 855, 102 S.Ct. 2182.

*Inwood Lab.* has been applied in the broader context of renting booth space at a flea market. *See Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1148–49 (7th Cir.1992). In *Hard Rock*, the Seventh Circuit explicitly addressed the distinction between a product and a service, noting that while the pharmaceutical company in *Inwood Lab.* clearly supplied a product to the third-party pharmacists, a "temporary help service ... might not be liable if it furnished [to the defendant] the workers he employed to erect his stand." *Hard Rock*, 955 F.2d at 1148. The court then held that space at a flea market was more

comparable to pharmaceuticals than to manpower, in part because of the close comparison between the legal duty owed by a landlord to control illegal activities on his or her premises and by a manufacturer to control illegal use of his or her product. *Id.* at 1149. We adopted the *Hard Rock* analysis in *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir.1996), holding that a flea market could be liable for contributory infringement if it "suppl[ied] the necessary marketplace" for the sale of infringing products. *Id.* at 265 (citing *Hard Rock*, 955 F.2d at 1149).

■ Hard Rock and *Fonovisa* teach us that when measuring and weighing a fact pattern in the contributory infringement context without the convenient "product" mold dealt with in *Inwood Lab.*, we consider the extent of control exercised by the defendant over the third party's means of infringement. *Hard Rock*, 955 F.2d at 1148–49 (noting the common-law responsibilities of a landlord regarding illegal activity on a rented premises); *see Fonovisa*, 76 F.3d at 265 (adopting *Hard Rock*'s analysis). Direct control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark permits the expansion of *Inwood Lab.*'s "supplies a product" requirement for contributory infringement.

**B**

■ The case at bench involves a fact pattern squarely on the "service" side of the product/service distinction suggested by *Inwood Lab* and its offspring. All evidence in the record indicates that NSI's role differs little from that of the United States Postal Service: when an Internet user enters a domain-name combination, NSI translates the domain-name combination to the registrant's IP Address and routes the information or command to the corresponding computer. Although NSI's routing service is only available to a registrant who has paid NSI's fee, NSI does not supply the domain-name combination

any more than the Postal Service supplies a street address by performing the routine service of routing mail. As the district court correctly observed,

> Where domain names are used to infringe, the infringement does not result from NSI's publication of the domain name list, but from the registrant's use of the name on a web site or other Internet form of communication in connection with goods or services.... NSI's involvement with the use of domain names does not extend beyond registration.

985 F.Supp. at 958.

The "direct control and monitoring" rule established by *Hard Rock* and *Fonovisa* likewise fails to reach the instant situation. The district court correctly recognized that NSI's rote translation service does not entail the kind of direct control and monitoring required to justify an extension of the "supplies a product" requirement. *See* 985 F.Supp. at 962 ("While the landlord of a flea market might reasonably be expected to monitor the merchandise sold on his premises, NSI cannot reasonably be expected to monitor the Internet."). Such a stretch would reach well beyond the contemplation of *Inwood Lab.* and its progeny.

In an attempt to fit under *Fonovisa*'s umbrella, Lockheed characterizes NSI's service as a licensing arrangement with alleged third-party infringers. Although we accept Lockheed's argument that NSI licenses its routing service to domain-name registrants, the routing service is just that—a service. In *Fonovisa* and *Hard Rock*, by contrast, the defendants licensed real estate, with the consequent direct control over the activity that the third-party alleged infringers engaged in on the premises. *Hard Rock*, 955 F.2d at 1149; *see Fonovisa*, 76 F.3d at 265.

## V

Lockheed also urges that NSI is liable as a printer or publisher under 15

U.S.C. § 1114(2) (1994), which reads in pertinent part:

> [T]he remedies given to the owner of a right infringed under this chapter or to a person bringing an action under section 1125(a) of this title shall be limited as follows:
>
> (A) Where an infringer or violator is engaged solely in the business of printing the mark or violating matter for others and establishes that he or she was an innocent infringer or innocent violator, the [plaintiff] shall be entitled as against such infringer or violator only to an injunction against future printing.
>
> (B) Where the infringement or violation complained of is contained in ... an electronic communication ..., the remedies ... shall be limited to an injunction against the presentation ... in future transmissions of such electronic communications.

*Id.* Section 1114(2) does not create an independent cause of action, but limits the remedies available to a plaintiff from an innocent infringer, requiring infringement of a trademark right or success on an unfair competition claim for injunctive relief. *Barrios v. American Thermal Instruments, Inc.*, 712 F.Supp. 611, 620 (S.D.Ohio 1988) ("It is important to note that § 1114(2)(a) ... does not relate to the potential *liability* of a printer. Instead, this statute limits the *relief* which a Court may grant against a printer to an injunction against future printing."); *see* 3 J. Thomas McCarthy, *Trademarks & Unfair Competition*, § 25:29 (Supp.1998) ("The Lanham Act, as amended effective in 1989, limits the liability of innocent infringement...."). Because Lockheed does not appeal summary judgment for NSI on Lockheed's claims of service mark infringement and unfair competition, Lockheed cannot establish the necessary predicate for its § 1114(2) argument on appeal.

## VI

Finally, Lockheed argues that the district court abused its discretion in fail-

ing to grant leave to amend its complaint to (1) add a contributory dilution cause of action and (2) include allegations of several other offending domain-name combinations. As a general rule, leave to amend should be "freely given when justice so requires." Fed.R.Civ.P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). We consider four factors when reviewing a decision whether to permit an amendment: (1) bad faith on the part of the plaintiffs; (2) undue delay; (3) prejudice to the opposing party; and (4) futility of the proposed amendment. *Griggs*, 170 F.3d at 877.

■ Although delay is not a dispositive factor in the amendment analysis, it is relevant, *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir.1990), especially when no reason is given for the delay, *Swanson v. United States Forest Serv.*, 87 F.3d 339, 345 (9th Cir. 1996). Lockheed's motion to amend came several months after the stipulated deadline for amending or supplementing the complaint. Nothing in the proposed amended complaint relied on facts that were unavailable before the stipulated deadline. The amendment was one that Lockheed had been considering three months before the stipulated deadline. Finally, Lockheed did not explain the delay, but supported it based on a claim of no prejudice to NSI.

■ A need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint. *Solomon v. North Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir.1998). Lockheed sought to add complaints regarding new domain-name registrants which would require NSI to conduct discovery on each new registrant. Lockheed's new cause of action would also require NSI to conduct discovery of whether the domain-name registrants were diluting Lockheed's service mark. The district court's factual finding that allowing the late amendment would prejudice NSI is not clearly erroneous.

Bad faith on the part of the moving party also supports denying the motion to amend. *Griggs*, 170 F.3d at 881. Facing a summary judgment motion, Lockheed sought to amend its complaint to add causes of action on which discovery had not been undertaken. The district court noted that this might reflect bad-faith on the part of Lockheed.

■ Although we conclude from the above discussion that the district court was well within its discretion to deny Lockheed leave to amend its complaint, the fourth factor—futility of the proposed amendment—also supports the decision. Where the legal basis for a cause of action is tenuous, futility supports the refusal to grant leave to amend. *Morongo Band*, 893 F.2d at 1079. Although courts have discussed contributory dilution, no appellate court or statute has yet established the cause of action. *Academy of Motion Picture Arts & Sciences v. Network Solutions, Inc.*, 989 F.Supp. 1276, 1279 (C.D.Cal.1997).

The one court to recognize the contributory dilution cause of action defined the claim as encouraging others to dilute. *Kegan v. Apple Computer Inc.*, 42 U.S.P.Q.2d 1053, 1062 (N.D.Ill.1996). The proposed cause of action thus appears to import the definition of "contributory" from *Inwood Lab.*, 456 U.S. at 854, 102 S.Ct. 2182. Indeed, Lockheed's proposed amended complaint alleged that NSI continued to supply its routing service to registrants, knowing that these parties were diluting Lockheed's "Skunk Works" service mark. As we have already concluded, however, NSI does not supply a product or engage in the kind of direct control and monitoring required to extend the *Inwood Lab.* rule. We agree with the district court that futility supports its decision to refuse leave to amend the complaint.

## VII

NSI requested attorneys' fees pursuant to the Lanham Act, 15 U.S.C. § 1117(a). We deny its request because Lockheed's appeal was not sufficiently unreasonable or frivolous to constitute an "exceptional case[ ]" as required by the Lanham Act for attorneys' fees to be warranted.

## VIII

NSI is not liable for contributory infringement as a matter of law. Lockheed does not appeal the district court's decision on its infringement, unfair competition, and dilution claims against NSI, and the district court did not abuse its discretion in refusing leave to amend the complaint. We have also considered Lockheed's request for judicial notice and motion to strike and deny both.

AFFIRMED.