**LOCKHEED MARTIN CORPORATION,**
Plaintiff,

v.

**NETWORK SOLUTIONS, INC.,**
**et al., Defendants.**

No. 4:00–CV–0405–A.

United States District Court,
N.D. Texas,
Fort Worth Division.

May 1, 2001.

---

12. *Id.*

*MEMORANDUM OPINION*
*and ORDER*

McBRYDE, District Judge.

Came on for consideration the motion of plaintiff, Lockheed Martin Corporation, for partial summary judgment, and the motion of defendant, Network Solutions, Inc., for summary judgment. The court, having considered the motions, the responses, the record, the summary judgment evidence,[1] and applicable authorities, finds that plaintiff's motion should be denied and that defendant's motion should be granted.

I.

*Plaintiff's Claims*

On April 28, 2000, plaintiff filed its original petition in the 348th Judicial District Court of Tarrant County, Texas. By notice of removal filed May 12, 2000, the action was brought before this court. In its petition, plaintiff asserts two causes of action against defendant: violation of parts of the Anticybersquatting Consumer Protection Act of 1999, Pub. Law No. 106–113, 113 Stat. 1536, (the parts on which plaintiff relies in its pleading and briefs are codified at 15 U.S.C. §§ 1114(2)(D)(iii), 1116, 1117, and 1125(d)) ("ACPA") and violation of Texas Business and Commerce Code § 16.29.

The petition alleges:

Plaintiff is the owner of the "SKUNK WORKS" and "LOCKHEED MARTIN" marks, which are famous and federally registered. Defendant is the principal registrar of non-military generic top-level domain names and solely maintains the registry of such domain names for use on the Internet. Defendant does not protect mark owners by refusing to register names, such as "theskunkworks.net," "skunkworkz.com," "skunkwrx.com," "skunkworks.org," "acmeskunk-

1. The court notes that each party has objected to certain summary judgment evidence filed by the other. As a matter of course, the court does not strike summary judgment evidence, but gives the evidence whatever weight it may deserve.

works.com," "skunkwurx.com," "skunknet-works.com," "lockheedmartin.org," "lockheedmartin-comsat.com," and "comsat-lockheedmartin.com," that infringe such marks. Instead, in bad faith and for profit, defendant grants and maintains infringing Internet domain name registrations for use by third parties in interstate commerce.[2]

## II.

### Grounds of the Motions

Plaintiff's motion for partial summary judgment addresses only its cause of action under the ACPA. It contends that, as a matter of law, defendant has violated 15 U.S.C. § 1125(d)(1)(A).

Defendant's motion addresses both of plaintiff's causes of action. It contends, first, that plaintiff has failed to establish that the ACPA applies to it as a domain name registrar and registry and, second, that plaintiff cannot prevail factually or legally on its claims under § 16.29 of the Texas Business and Commerce Code. Defendant further urges that all of plaintiff's claims are barred by *res judicata* or issue preclusion.

## III.

### Undisputed Facts

The undisputed summary judgment evidence establishes the following facts:

Plaintiff owns the "SKUNK WORKS" and "LOCKHEED MARTIN" marks, which are registered with the United States Patent and Trademark Office. Plaintiff has continuously used the marks in commerce since they were registered. Both marks are recognized in the aerospace and aeronautical fields as identifying goods and services offered by plaintiff.

Defendant is one of more than one hundred registrars of domain names in the ".com," ".org," and ".net" top-level domains ("TLDs") on the Internet. It also performs the functions of the registry for such TLDs and maintains the authoritative database of Internet registrations in those TLDs. Defendant aggressively encourages the registration of domain names, since that is how it derives the majority of its revenue. To that end, defendant offers discounts to persons who register 100 or more domain names at a time.

The Internet is an international super network connecting millions of individual computer networks and computers. The Internet is not a single entity. It is a highly diffuse and complex system. For commercial users, the worldwide web (the "web") may be the most important part of the Internet. The web is easy to use for people inexperienced with computers. Information on the web can be presented on pages of graphics that contain links to other pages either within the same set of data files ("web sites") or within data files located on other computer networks. Web sites, like other information resources on the Internet, are currently addressed using the Internet "domain name system." A numbering system called the "Internet protocol" gives each individual computer or network a unique numerical address on the Internet. The "Internet protocol number," or "IP number," consists of four groups of digits separated by periods. For the convenience of users, individual computers on the Internet may also have an alphanumeric name ("domain name"). Specialized computers known as "domain name servers" maintain tables linking domain names to IP numbers. Domain names are arranged so that, reading from

---

**2.** The court notes that plaintiff's petition refers to "Does 1 through 10" as defendants.

The court does not consider that any unidentified persons are parties to this action.

right to left, each part of the name points to a more localized area of the Internet. "Second level" domain names, the name just to the left of the ".com" or other TLD, must be exclusive.

The Internet Corporation for Assigned Names and Numbers ("ICANN") is a non-profit corporation that governs the Internet. It was established in 1998 and is officially recognized by the U.S. Department of Commerce as the global, non-profit consensus organization designed to carry on administration of the Internet name and address system. ICANN has four mandates, each in a different stage of completion. First, ICANN bears responsibility for overseeing the infrastructure of the Internet. Second, it bears responsibility for ensuring competition among domain name registrars of the TLDs. Third, ICANN bears partial responsibility for establishing domain name dispute resolution policies. And, fourth, ICANN bears responsibility for determining whether and when to add new TLDs.

Defendant receives its authority to act as a domain name registrar and registry from ICANN and the Department of Commerce and its conduct and policies are governed by detailed, sometimes three-way, contracts. Defendant accepts registrations of more than one hundred thousand Internet domain names per month and has accepted more than twelve million domain name registrations.

As a registry, defendant screens domain name applications against a registry database of existing second-level domain names to prevent duplicate registrations of the same name. It also maintains a directory linking domain names with the IP numbers of domain name servers. Domain name servers connect domain names with other Internet computers that host web sites and e-mail systems. As a registry, defendant must accept and list whatever domain name registrations are accepted by all ICANN-accredited domain name registrars.

As a registrar, defendant does not make an independent determination of an applicant's right to use a domain name. Defendant does not assign domain names; rather, users create and choose any available second-level domain name. Ninety percent of the time, the registration process does not involve human review or participation. Defendant does not consult with third parties during the registration process, does not check a registrant's right to use a particular character string or word in a name combination, and does not monitor the use of the domain name once registered. (However, prior to December 2000, defendant did refuse to register names containing certain obscene terms.)

Cybersquatters are people who register others' trademarks or typographical variations of those marks for improper purposes. For example, a cybersquatter may try to sell a domain name he has registered to a trademark owner. Defendant does not refuse to do business with cybersquatters, because turning down their business would adversely impact its profits.

Pursuant to its agreements with ICANN, defendant is required to comply with consensus policies adopted by ICANN, which specifically include the Uniform Dispute Resolution Policy ("UDRP"). The UDRP provides for resolution of domain name disputes through mandatory administrative proceedings. All those who register a domain name in the ".com," ".net," and ".org" TLDs must agree to abide by the UDRP, which permits the owner of a trademark to initiate an administrative complaint against an alleged cybersquatter. The complaint is decided by a panel of one or three decision-makers who render a written, published decision as to the registration of the dis-

puted domain name. The average time from filing to decision is fifty-two days. Independent judicial proceedings are available. Under the UDRP, defendant maintains a domain name's status quo during the course of a dispute resolution proceeding. The domain name registrant, however, is prohibited from selling or otherwise transferring the domain name while a proceeding is in progress. If a UDRP panel decides that a domain name should be cancelled or transferred, defendant is required to wait ten business days before implementing the decision. The decision will then be implemented unless defendant has received official documentation that the domain name registrant has commenced a lawsuit against the complainant in a qualified jurisdiction. If such a lawsuit has been filed, defendant will take no further action unless and until it receives notice of a settlement or that the lawsuit has been dismissed or that the court has rendered a decision requiring it to discontinue registration of the contested domain name.

In 1996, plaintiff filed suit against defendant in the United States District Court for the Central District of California, alleging direct trademark infringement, contributory trademark infringement, and trademark dilution of plaintiff's SKUNK WORKS service mark. *Lockheed Martin Corp. v. Network Solutions, Inc.*, 985 F.Supp. 949 (C.D.Cal.1997). Plaintiff there complained that defendant violated federal trademark law by accepting registrations of Internet domain names that were identical or confusingly similar to service marks held by plaintiff, including the SKUNK WORKS service mark. The district court ruled in favor of defendant and that decision was affirmed on appeal by the United States Court of Appeals for the Ninth Circuit. *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980 (9th Cir.1999).

## IV.

### Applicable Summary Judgment Principles

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. *Anderson*, 477 U.S. at 248, 256, 106 S.Ct. 2505. To meet this burden, the nonmovant must "identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s][its] claim[s]." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.1994). An issue is material only if its resolution could affect the outcome of the action. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. *Simmons v. Lyons*, 746 F.2d 265, 269 (5th Cir.1984).

The standard for granting a summary judgment is the same as the standard for a directed verdict. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 597, 106 S.Ct. 1348.

## V.

*Pertinent Provisions of § 1125(d)*

Section 1125(d) provides, in pertinent part:

**(d) Cyberpiracy prevention**

(1)(A) A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person

(i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and

(ii) registers, traffics in, or uses a domain name that-

(I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;

(II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or

(III) is a trademark, word, or name protected by reason of section 706 of Title 18 or section 220506 of Title 36.

(B)(i) In determining whether a person has a bad faith intent described under subparagraph (A), a court may consider factors such as, but not limited to

(I) the trademark or other intellectual property rights of the person, if any, in the domain name;

(II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

(III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

(IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names

which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c)(1) of this section.

(ii) Bad faith intent described under subparagraph (A) shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful.

(C) In any civil action involving the registration, trafficking, or use of a domain name under this paragraph, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark.

(D) A person shall be liable for using a domain name under subparagraph (A) only if that person is the domain name registrant or that registrant's authorized licensee.

(E) As used in this paragraph, the term "traffics in" refers to transactions that include, but are not limited to, sales, purchases, loans, pledges, licenses, exchanges of currency, and any other transfer for consideration or receipt in exchange for consideration.

15 U.S.C. § 1125(d).

## VI.

### The Ruling on the Motion to Dismiss Is Not Determinative of Anything

■ Plaintiff urges that the court is bound by its decision not to grant defendant's motion to dismiss, and argues that the court implicitly agreed with plaintiff as to the potential merits of its claims. All the court decided by its order denying the motion to dismiss was that plaintiff should be allowed to proceed with its claims. In other words, the court was not then satisfied that plaintiff could prove no set of facts that would entitle it to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The court is satisfied that the law of the case doctrine does not bar it at this time from reaching the different conclusions it has reached in this memorandum opinion and order. *See Loumar v. Smith,* 698 F.2d 759, 762 (5th Cir.1983).

## VII.

### Applicability of the ACPA

■ The primary issue in this case is how parts of the ACPA are to be interpreted. Plaintiff maintains that defendant has violated 15 U.S.C. § 1125(d) by registering, maintaining, or trafficking in ten specific domain names that allegedly infringe its LOCKHEED MARTIN and SKUNK WORKS marks. Defendant, on the other hand, contends that plaintiff has adduced no evidence that the actions of which plaintiff complains subject it to liability under § 1125(d).

Having studied the language of § 1125(d) in the light of the summary judgment record, the court cannot conclude that it creates a cause of action against defendant as a domain name registrar or registry. There is no summary judgment evidence that plaintiff is a person who has had a "bad faith intent to profit from" specific marks, 15 U.S.C. 1125(d)(1)(A)(i), that are registered with it or contained in its registry. That the

court's interpretation of "intent to profit from that mark" is correct is supported by § 1125(d)(1)(B)(i), which lists factors the court may consider in determining whether a person has a bad faith intent. Although the list is not exclusive, none of the conditions and conduct listed would be applicable to a person functioning solely as a registrar or registry of domain names.

Moreover, the court has concluded that there is no summary judgment evidence that defendant fits within the (ii) clause of § 1125(d)(1)(A). There is no evidence that defendant is a person that "registers, traffics in, or uses a domain name...." The word "registers," when considered in context, obviously refers to a person who presents a domain name for registration, not to the registrar. The "traffics in" part of clause (ii) is defined by § 1125(d)(1)(E) to mean "transactions that include, but are not limited to, sales, purchases, loans, pledges, licenses, exchanges of currency, and any other transfer for consideration or receipt in exchange for consideration." There is no summary judgment evidence that defendant has engaged in transactions of any of those kinds in reference to domain names. Section 1125(d)(1)(D) expressly limits the "uses" feature to the domain name registrant or the registrant's authorized licensee.

It is quite understandable that Congress did not cause defendant as a domain name registrar, or as keeper of the registry, to be subject to civil liability under § 1125(d). Although plaintiff now tries to backtrack somewhat from the position that defendant as registrar should perform gatekeeper functions for mark owners, even the modified gatekeeper role it now proposes is untenable. Sheer volume alone would prohibit defendant performing the role plaintiff would assign. Defendant simply could not function as a registrar, or as keeper of the registry, if it had to become entangled in, and bear the expense of, disputes regarding the right of a registrant to use a particular domain name. The fact that defendant could theoretically do what plaintiff asks does not mean that defendant is obligated to do so at the risk of financial ruin. The reason the UDRP was developed was to provide the mechanism to resolve these disputes. Not only would imposing plaintiff's scheme render the UDRP nugatory, it would cause the domain name registration system in its entirety not to be feasible.

Plaintiff argues that § 1125(d) must impose liability, because § 1114(2)(D)(iii) would otherwise be superfluous. That clause provides:

(iii) A domain name registrar, a domain registry, or other domain name registration authority shall not be liable for damages under this section for the registration or maintenance of a domain name for another absent a showing of bad faith intent to profit from such registration or maintenance of the domain name.

That "safe harbor" provision refers only to "damages under this section," meaning § 1114, not § 1125, of the ACPA. Had Congress intended to refer to § 1125, it would have done so. See, e.g., 15 U.S.C. § 1114(2)(E). Moreover, § 1114(2) does not create independent causes of action, but limits available remedies. See *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 985 (9th Cir.1999).

## VIII.

### *Texas Anti-dilution Statute*

Section 16.29 of the Texas Business and Commerce Code provides:

A person may bring an action to enjoin an act likely to injure a business reputation or to dilute the distinctive quality of a mark registered under this

chapter or Title 15, U.S.C., or a mark or trade name valid at common law, regardless of whether there is competition between the parties or confusion as to the source of goods or services. An injunction sought under this section shall be obtained pursuant to Rule 680, *et seq.*, of the Texas Rules of Civil Procedure.

Defendant contends that it has not engaged in an "act" in violation of § 16.29.

 To establish a claim under § 16.29, plaintiff must show that it owns a distinctive mark and that there is a likelihood of dilution. *E & J Gallo Winery v. Spider Webs, Ltd.,* 129 F.Supp.2d 1033, 1037 (S.D.Tex.2001). "Dilution is a concept most applicable where a subsequent user uses the trademark of a prior user for a product so dissimilar from the product of the prior user that there is no likelihood of confusion of the products or sources, but where the use of the trademark by the subsequent user will lessen the uniqueness of the prior user's mark with the possible future result that a strong mark may become a weak mark." *Id.* (quoting *Holiday Inns, Inc. v. Holiday Out in Am.,* 481 F.2d 445, 450 (5th Cir.1973)). A dilution claim must be premised upon the defendant's use of the allegedly diluting mark as a trademark, or any use of or attempt to benefit from plaintiff's trademark. *Exxon Corp. v. Oxxford Clothes, Inc.,* 109 F.3d 1070, 1084 (5th Cir.1997). "The gravamen of a dilution complaint is that the continuous use of a mark similar to plaintiff's works an inexorably adverse effect upon the distinctiveness of the plaintiff's mark, and that, if he is powerless to prevent such use, his mark will lose its distinctiveness entirely...." *E & J Gallo Winery,* 129

F.Supp.2d at 1038 (quoting *Polaroid Corp. v. Polaraid, Inc.,* 319 F.2d 830, 836 (7th Cir.1963)). Without doubt, ownership of a domain name that contains the plaintiff's registered trademark puts the plaintiff's reputation and name at the mercy and whim of the domain name owner. *Id.* at 1041. However, acceptance of registrations for domain names is not a use of a mark; nor does it reflect an intent to profit from the mark.[3] *See supra* 14–15; *Lockheed Martin Corp. v. Network Solutions, Inc.,* 985 F.Supp. 949 (C.D.Cal.1997), *affirmed,* 194 F.3d 980 (9th Cir.1999).

## IX.

### *The Res Judicata and Other Grounds Urged by Defendant*

The court has not evaluated the merit of other grounds defendant has assigned in support of its motion for summary judgment, such as *res judicata* and collateral estoppel. The court's silence on those other grounds is not to be taken as any indication that the court has formed an opinion one way or the other on the merit of any of those grounds.

## X.

### *ORDER*

For the reasons discussed herein,

The court ORDERS that plaintiff's motion for partial summary judgment be, and is hereby, denied; that defendant's motion for summary judgment be, and is hereby, granted; that plaintiff take nothing on its claims against defendant; and that such claims be, and are hereby, dismissed.

---

**3.** "[A] domain name registration is the product of a contract for services between the registrar and the registrant. By this view, the contracted-for service produces benefit and value depending upon how the party receiving the service exploits it. Thus, a [registrant] 'owns' the domain name registration in the same way that a person 'owns' a telephone number." *Dorer v. Arel,* 60 F.Supp.2d 558, 561 (E.D.Va.1999).

## FINAL JUDGMENT

In accordance with the court's memorandum opinion and order of even date herewith,

The court ORDERS, ADJUDGES, and DECREES that plaintiff, Lockheed Martin Corporation, take nothing on its claims against defendant, Network Solutions, Inc., and that such claims be, and are hereby, dismissed with prejudice. The court further ORDERS, ADJUDGES, and DECREES that defendant have and recover its court costs from plaintiff.