**SIZE, INC., Plaintiff,**

**v.**

**NETWORK SOLUTIONS, INC., et al., Defendants.**

**No. CIV.A. 03–26–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

April 1, 2003.

**570**

Robert M. Doherty, Esq., Baker & Hostetler, Washington, DC, for Plaintiff or Petitioner.

Charles D. Ossola, Esq., Arnold & Porter, Washington, DC, Jonathan D. Westreich, Esq., Alexandria, for Defendant or Respondent.

## MEMORANDUM OPINION

BRINKEMA, District Judge.

Before the Court is defendant Network Solutions, Inc.'s ("NSI") Motion to Dismiss, in which NSI asks to be dismissed from this civil action on the ground that the complaint fails to state claims against NSI for which relief can be granted under theories of contributory infringement (Count VII), conversion (Count VIII), negligence (Count IX), and breach of contract (Count IV). For the reasons discussed below the Court will grant NSI's motion and dismiss it as a defendant from this civil action.

## BACKGROUND

The complaint alleges that plaintiff Size, Inc. ("Size") is a privately-held California corporation that provides television commercial, music video, advertising, and art production services. Its principal place of business is in Los Angeles, California. Size maintains that it has a common law trademark in the "Size" trademark by virtue of its use of that mark in commerce since 1980, and that the mark has become famous and distinctive and has acquired secondary meaning associated with the services Size provides. NSI is a Delaware corporation with its principal place of business located in Herndon, Virginia, within this district. NSI registers Internet domain names to third parties and routes Internet users to a third party's site on the World Wide Web by "translating" that party's registered domain name into the IP address of the computer server on which the site is located.[1]

On September 22, 1995, Size initially registered the domain name "size.com" with NSI. As part of that registration process, Size signed NSI's service agreement (the "Agreement").[2] The Agreement provides, in relevant part:

13. LIMITATION OF LIABILITY. You [Size] agree that our [NSI] liability, and your exclusive remedy, with respect to any Network Solutions' service(s) provided under this Agreement and/or for any breach of this Agreement is solely limited to the amount you paid for such service(s). Network Solutions and its contractors shall not be liable for any direct, indirect, incidental, special or consequential damages resulting from the use or inability to use any of the Network Solutions' services or for the

---

1. For a thorough discussion of Internet operation and terminology, *see Lockheed Martin Corp. v. Network Solutions, Inc.*, 985 F.Supp. 949, 951–53 (C.D.Cal.1997) (*"Lockheed I"*).

2. Although Size did not attach a copy of the Agreement to its complaint, NSI has attached one as Exhibit A to the Declaration of John Hornak. The Court may and does consider this document in its ruling because Size relies upon the Agreement in its complaint. *See Gasner v. County of Dinwiddie*, 162 F.R.D. 280, 282 (E.D.Va.1995) (holding that "when a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach the document to a motion to dismiss without converting the motion to one for summary judgment").

cost of procurement of substitute services.

*See Decl. of John Hornak,* Ex. A at ¶ 13. While Size does not specify the amount of money it paid to NSI for registration, NSI maintains that Size paid $100 for the initial two years of service. *Id.* at 2, ¶ 7. In its registration, Size listed as its administrative and billing contact Size employee Yoko Onishi, with an e-mail address of "size1@earthlink.net" (the "Earthlink address").

Beginning in 1996, Size operated an Internet website under the size.com domain name. Size used the website to transmit data and communications to and from its clients, including what it considers to be highly confidential client information. Size also used the website to attract new customers. Yoko Onishi left Size in the summer of 1999. Size terminated the Earthlink address on March 17, 2000.

On approximately June 1, 2001, a company named "Interland" notified Size that its registration of the size.com domain name would soon expire. Although the parties disagree as to the exact relationship between Interland and NSI, for the purposes of this opinion, the Court accepts the complaint's allegation that Interland is a "wholly owned and controlled ... subsidiary" of NSI. Interland sent Size an electronic preprinted form (the "Renewal Form"), with instructions directing Size to print out the form on its letterhead, have one of its officers sign the form, and fax the completed form to NSI's Domain Name Renewal Authorization Department. Size complied with these instructions, and, according to NSI, paid $189 for a nine-year renewal.

The Renewal Form contains provisions stating that the signatory "[is] aware that the domain name Registrant (Company Contact), Administrative Contact, and Technical contact [sic] will NOT be changed for the above domain name(s),"

and that "[t]he actions above are being completed in accordance with the instructions appearing in each corresponding Domain Name Registration Agreement as authorized by Network Solutions." *See Mem. P. & A. in Supp. of Def. Network Solution, [sic] Inc.'s Mot. to Dismiss,* Ex. 1. The name and signature on the Renewal Form are that of one Mayumi Nagata, who is listed as Size's Office Manager. Next to Mayumi Nagata's name, Size added the statement "Yoko Onishi is no longer with us." Size listed its e-mail address as "la@size.com", but nowhere on the Renewal Form did Size indicate that the Earthlink address was no longer valid.

Beginning on December 1, 2002, clients of Size reported that they had sent important confidential information to size.com e-mail accounts that were neither received by Size employees nor returned to the senders' own accounts. After Size found that it was unable to access the server that hosted its website, it contacted NSI's customer service department on December 3, 2002. Size alleges that an NSI representative stated that the size.com domain name had been transferred to an individual in Russia named Alexandr Ilin after an e-mail authorizing the transfer was sent to NSI from the Earthlink address. NSI informed Size that it would investigate the transfer to determine whether the authorization was a forgery, but Size never received the results of any NSI investigation into the matter. Size insists that it never authorized Ilin to use the Earthlink address or make changes to its NSI account.

Size alleges that it placed four successive phone calls to NSI between December 11 and December 19, 2002, informing NSI of the forged authorization and requesting that NSI take steps to protect Size's interest in the size.com domain name. At some point during that month, however, Ilin changed the domain name registrant from

Size to Future Media Architects, Inc. ("FMA"), which then, Size alleges, authorized a transfer of the domain name's registration from NSI to Enom, Inc., a domain name registrar located in Redmond, Washington. Size has sued the size.com domain name, *in rem*, and Ilin, FMA, and NSI, alleging various claims under federal and state law. NSI has moved to dismiss all of the counts against it, specifically Count VII (Contributory Trademark Infringement under 15 U.S.C. § 1125(a)(1)), Count VIII (Conversion), Count IX (Negligence), and Count IV (Common Law Breach of Contract).

## DISCUSSION

### I. Standard of Review

A complaint should be dismissed for failure to state a claim pursuant to Fed. R.Civ.P. 12(b)(6) if the plaintiff "can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In considering NSI's Motion to Dismiss, the Court accepts as true all of Size's factual allegations. *See Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). It is not, however, bound to accept any legal conclusions couched as factual allegations. *Id.*

### I. Count VII (Contributory Trademark Infringement)

■ In Count VII, Size alleges that NSI's transfer of the size.com domain name to Ilin and failure to freeze the domain after Size put it on notice of Ilin's unauthorized transfer violated 15 U.S.C. § 1125(a)(1) under the theory of contributory trademark infringement.[3] To be liable under that theory, a defendant must (1) intentionally induce another to infringe a trademark, or (2) continue to supply a product to a third party with actual or constructive knowledge of the infringement. *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 854, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982). Size does not allege that NSI intentionally induced Ilin or FMA to infringe Size's trademark; the question squarely before us, therefore, is whether Size states a claim under the second prong of *Inwood Labs*. Size argues that NSI's control over the registration and transfer of domain names is sufficient to hold it liable, because NSI provided the forum through which Ilin was able to infringe Size's trademark.

■ In its Motion to Dismiss, NSI argues that Size cannot maintain a contributory trademark infringement action against it because it does not supply a "product" within the meaning of *Inwood Labs*. NSI maintains that because domain name registrars do not monitor or control the use of domain names, they cannot be held liable for contributory infringement committed by the domain name holders. NSI relies on the Ninth Circuit's reasoning in *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980 (9th Cir.1999) ("*Lockheed II* ") to support its conclusion. In *Lockheed II*, the court found that domain name registrars lack the requisite

---

**3.** The Lanham Act, 15 U.S.C. § 1125(a)(1), provides that:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ... is likely to cause confu-

sion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

degree of control over the activity of third-party infringers to justify extending the meaning of "product" to their activities. *See id.* at 984–85.

This Court agrees with the *Lockheed II* analysis, and finds that NSI's domain name registration service is just that—a service.[4] The registrant selects the domain name and provides any content associated with that domain name; all that NSI does is "translate" the domain name into the registrant's IP address and route users to that address. In this regard, NSI's function is more equivalent to the passive messenger service provided by the United States Postal Service than to the more interactive role of a flea-market operator who has a significant degree of control over the activities of its clients. *See, e.g., Hard Rock Café Licensing Corp. v. Concession Serv., Inc.,* 955 F.2d 1143 (7th Cir.1992) (recognizing that flea market owners who lease vending space to trademark infringers can be liable for continuing to supply that space after knowledge of the infringement). NSI is simply a routing service, and does not supply domain name combinations any more than the Postal Service supplies street addresses to its customers. *See id.*

Size argues that the reasoning of *Lockheed II* is distinguishable because it is the domain name itself, rather than any content associated with that domain name, that is alleged to be the infringing "product." This argument is similarly unpersuasive. Size does not allege that NSI monitors or controls the use of the domain names it registers. As NSI correctly argues, NSI merely connects a domain name with a registrant, upon the initiation of the registrant alone.

Nothing in Size's allegations suggests that NSI exceeded its role as a neutral stakeholder with no direct involvement in the activities of the allegedly infringing third party. There is no allegation, for example, that NSI failed to follow its own procedures in transferring the registration of the size.com domain name to Ilin. Nowhere in the Renewal Form did Size explicitly state that the Earthlink address was no longer a valid point-of-contact address, and Size's indication that its former point-of-contact was no longer employed with the company appears on its face to be inconsistent with its agreement on the Renewal Form that none of its administrative contacts would be changed. Moreover, when parties dispute the legality of a registrant's association with a domain name, the Agreement specifies a formal process which the parties must use to resolve that dispute. *See Decl. of John Hornak,* Ex. A at ¶ 8. Size has not alleged that it attempted to comply with NSI's established domain name dispute procedures once it discovered that Ilin had effected an unauthorized transfer of the size.com domain name.

For these reasons, the Court finds that the complaint fails to allege a cause of action for contributory trademark infringement against NSI. Therefore, Count VII will be dismissed.

## II. Counts VIII and IX (Conversion and Negligence)

The remaining counts involve claims under state law. In Count VIII, Size alleges

---

4. Indeed, we find the reasoning underlying the *Lockheed II* decision to be similar to that of other courts, and Congress, in limiting the liability of Internet service providers ("ISPs") for libelous statements published by third parties using an ISP's service. *See, e.g., Zeran v. America Online, Inc.,* 129 F.3d 327, 333 (4th Cir.1997) (noting that the imposition of liability on ISPs for publishing third-party libel would "create an impossible burden in the Internet context" that would deter ISPs from engaging in self-regulation, and holding that Congress passed the Communications Decency Act of 1996, 47 U.S.C. § 230, to ensure that ISPs would not face publisher liability for third-party libel).

that it has a property interest in the size.com domain name which NSI unlawfully converted, first by transferring registration of the domain name to Ilin without authorization and next by transferring control of the domain name to Enom. In Count IX, Size maintains that NSI was negligent in violating its duty to use ordinary care not to harm Size once NSI learned that Ilin had acquired the domain name, and that NSI breached that duty by transferring the domain name to Enom. NSI argues that any legal duty it owed to Size arises from the Agreement itself, and that Size's claims of conversion and negligence must be dismissed because the Agreement governs the entire relationship between the parties.

 Under Virginia law, "a party can, in certain circumstances, show both a breach of contract and a tortious breach of duty." *Richmond Metropolitan Authority v. McDevitt Street Bovis, Inc.*, 256 Va. 553, 558, 507 S.E.2d 344 (1998). However, the duty breached must be a common law duty, not one that exists between the parties solely because of the contract. *Id.* Therefore, for example, a claim for fraud in the inducement of a contract is not barred in a breach of contract action when a plaintiff can show that the defendant entered into the contract never intending to abide by its terms. *Id.* at 559–60, 507 S.E.2d 344. When, however, an allegation of conversion is nothing more than an allegation that the defendant negligently performed its contractual duties, such an allegation is not actionable in tort. *Out of Chaos, Ltd. v. AON Corp.*, 2001 WL 876876 at *4 (4th Cir. Aug. 3, 2001) (unpublished).

██ In this case, the terms of the Agreement established the legal relationship between Size and NSI. Although the parties dispute whether a domain name is "property" which can be converted, we need not reach that issue today. Regardless of whether the size.com domain name is deemed to be "property," Size agreed to be bound by NSI's domain name dispute policy, and any allegations of misfeasance with regard to NSI's transfer of the domain name to Enom would necessarily have to be based on a failure to comply with the procedures outlined in that policy. *See Decl. of John Hornak,* Ex. A. at ¶ 8. Similarly, allegations that NSI was negligent in transferring the domain name after notice of Ilin's forged authorization could only stand if the notice was sufficient under the Agreement to trigger a responsibility on the part of NSI to freeze the domain name and investigate the forged authorizations. Size cannot now circumvent the Agreement's terms by arguing that NSI owed it broader legal duties than were covered explicitly in the contract. Therefore, Count VIII (Conversion) and Count XI (Negligence) will both be dismissed as against NSI.

### III. Count IV (Breach of Contract)

██ As discussed above, the Agreement establishes that NSI's entire liability "for any breach of [the] Agreement is solely limited to the amount [ ] paid for such service(s)." *See Decl. of John Hornak,* Ex. A. at ¶ 13. At most, NSI's entire prospective liability for any breach of contract appears to be $289, well below the $75,000 minimum for diversity jurisdiction required by 28 U.S.C. § 1332. Even where the federal claims have been dismissed, a federal court may exercise its supplemental jurisdiction over pendant state claims. *See, e.g., Hollyday v. Rainey,* 964 F.2d 1441, 1443 (citing *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726–27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). However, a court also has the discretion to dismiss the state law claims in such an instance. Because we have dismissed all the other counts against NSI, and find that Size could at best recover

minimal damages on its breach of contract claim, we decline to exercise our supplemental jurisdiction over that claim. Therefore, Count IV will be dismissed without prejudice.

## V. Conclusion

For the reasons stated above, defendant NSI's Motion to Dismiss will be GRANTED by an Order accompanying this Memorandum Opinion.

The Clerk is directed to forward copies of this Memorandum Opinion to counsel of record.

## ORDER

For the reasons stated in the accompanying Memorandum Opinion, defendant Network Solutions, Inc.'s Motion to Dismiss is GRANTED, and it is hereby

ORDERED that Count IV be and is DISMISSED WITHOUT PREJUDICE; and it is further

ORDERED that Counts VII, VIII and IX be and are DISMISSED WITH PREJUDICE as to defendant Network Solutions, Inc.

The Clerk is directed to enter judgment in defendant Network Solutions, Inc.'s favor pursuant to Fed.R.Civ.P. 58 and forward copies of this Order to counsel of record.