STRICK CORPORATION

v.

James B. STRICKLAND, Jr.

No. Civ.A. 00–3343.

United States District Court,
E.D. Pennsylvania.

Aug. 27, 2001.

Michael F. Snyder, Seidel, Gonda, La-vorgna & Monaco, Arthur H. Seidel, Drinker, Biddle & Reath, LLP, Philadelphia, PA, for Plaintiff.

Carl Oppedahl, Marina T. Larson, Oppedahl & Larson, LLP, Dillon, CO, John B. Berryhill, Dann, Dorfman, Herrell & Skillman, Philadelphia, PA, for Defendant.

### MEMORANDUM AND ORDER

KAUFFMAN, District Judge.

Presently before the Court are Plaintiff Strick Corporation's ("Plaintiff") and Defendant James B. Strickland's ("Defendant") cross-motions for summary judgment and all responses thereto. For the reasons set forth below, the court will grant Defendant's motion for summary judgment and deny Plaintiff's cross-motion.

## I. BACKGROUND

Defendant is an independent computer consultant and software developer. In July 1995, he decided that it would be advantageous for his business to have an easy to remember Internet domain name.[1] He learned that it was too late to obtain the domain name strickland.com, which was registered to someone else, but that strick.com was available. (Strickland Decl. ¶ 2.) Defendant asserts that he is commonly known by the name "Strick," a name he has used since childhood. (Id. ¶ 1.) Consequently, Defendant registered the domain name strick.com and began using it to communicate with his clients. (Id. ¶ 2.)

Eight months later, in March 1996, Plaintiff, a manufacturer of transportation equipment with a product line including dry freight semi-trailers, container chassis, and converter dollies, contacted Defendant, seeking to obtain registration of the strick.com domain name.[2] (Am.Compl. ¶ 9; Decl. of Michael F. Snyder in Supp. of Pl.'s Cross–Mot. for Summ.J. ("Snyder Decl.") Ex. I.) The parties were unable to resolve the matter amicably, and in August

---

1. "A domain name is a way to identify and locate computers and resources connected to the Internet." *Chatam Int'l, Inc. v. Bodum, Inc.*, 157 F.Supp.2d 549, 553 n. 4 (E.D.Pa. 2001) (citing http://www.whois.net/whatdom.html (August 2, 2001)). It tells users where to find a particular web page, much like a street address or phone number tells people where to find a particular home or business. *Id.* (citation omitted). No two organizations can have the same domain name. *Id.*

2. Plaintiff owns the following registrations with the Patent and Trademark Office: "STRICK" for freight and heavy duty trailers and truck bodies; "STRICK and Design" for transferable non-self propelled heavy duty trailers, semi-trailers, cargo containers, truck bodies adapted to be mounted on trailer trucks, railway flat cars, and other conveyances; "STRICK" for heavy duty trailers, semi-trailers, durable cargo carrying units designed and built for conveyance by van size road vehicles, and truck bodies; and "STRICK Lease and Design" for rental of trailers. (Am.Compl.¶ 15.)

   Plaintiff maintains, *inter alia*, web sites at stricktrlr.com, strck.com, stricktrailer.com, strickcorp.com, and strickparts.com. (*Id.* ¶ 16.)

1996, Plaintiff asked Network Solutions, Incorporated ("NSI")[3] to place Defendant's domain name "on hold," making it unavailable for use by any party. In January 1997, NSI placed a "hold" on Defendant's domain name.[4]

The "hold" on strick.com continued for the next three years. Then, in January 2000, NSI announced that due to a policy change, it would restore domain names that were "on hold" unless the original complainant filed a lawsuit against the domain name owner or brought an ICANN challenge by a particular date. In May 2000, Plaintiff filed an ICANN challenge, selecting the National Arbitration Forum ("NAF") to resolve the dispute. The three-person NAF panel ordered that the domain name "strick.com" be released from the "hold" with full use restored to Defendant. *Strick Corp. v. James B. Strickland, Jr.*, FA 94801 (Nat.Arb.Forum, July 3, 2000).[5]

In June 2000, Plaintiff filed the instant Complaint and in July 2000, filed an Amended Complaint. On November 22, 2000, Defendant filed his motion for summary judgment and on January 8, 2001, Plaintiff filed its cross-motion. By Order dated June 26, 2001, the Court dismissed a number of counts in the Amended Complaint. The cross-motions seek summary judgment as to Plaintiff's remaining claims.

## II. *LEGAL STANDARD*

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A factual dispute is material only if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Whether a genuine issue of material fact is presented will be determined by asking if "a reasonable jury could return a verdict for the non-moving party." *Id.* In considering a motion for summary judgment, "[i]nferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992) (citation omitted).

## III. *DISCUSSION*

Plaintiff's and Defendant's cross-motions seek summary judgment as to the remaining claims in the Amended Complaint: Count II, entitled "Federal Dilution;" Count V, insofar as it relates to state law dilution; and Count VI, "Unfair Competition." The Court will first address the unfair competition claim. Then, it will address the federal and state dilution claims.[6]

---

3. NSI is an agency licensed to register and disseminate domain names by the Internet Corporation for Assigned Names and Numbers ("ICANN"). *Chatam*, 157 F.Supp.2d at 552–53 n. 5 (citing http://www.icann.org/general/fact-sheet.htm (August 2, 2001)). ICANN is a non-profit, private-sector corporation that is recognized by the United States and other governments as the global consensus entity to coordinate the technical management of the Internet's domain name system. *Id.*

4. Due to the dispute regarding strick.com, Defendant selected and registered the domain name tibertech.com.

6. The Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331 and supplemental jurisdiction over state claims under 28 U.S.C. § 1367.

## A. *Unfair Competition*

■ Count VI of the Amended Complaint is Plaintiff's claim of common law unfair competition. Under the common law, as under federal law,[7] the essence of an unfair competition claim is the likelihood of confusion. *Am. Fid. & Liberty Ins. Co. v. American Fidelity Group*, 2000 WL 1385899, at *1 n. 4 & *13 (citations omitted). In determining the likelihood of confusion in the market place, the court looks at a number of factors, including:

(1) the degree of similarity between the owner's mark and the alleged infringing mark;

(2) the strength of the owner's mark;

(3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase;

(4) the length of time the defendant has used the mark without evidence of actual confusion arising;

(5) the intent of the defendant in adopting the mark;

(6) the evidence of actual confusion;

(7) whether the goods, competing or not competing, are marketed through the same channels of trade and advertised through the same media;

(8) the extent to which the targets of the parties' sales efforts are the same;

(9) the relationship of the goods in the minds of consumers, whether because of the near-identity of the products, the similarity of function, or other factors; [and]

(10) other facts suggesting that the consuming public might expect the prior owner to manufacture both products, or expect that the prior owner is likely to expand into the defendant's market.

*A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 215 (3d Cir.2000); *American Fid. & Liberty Ins. Co.*, 2000 WL 1385899, at *15 (citations omitted). The district court should utilize those factors that seem appropriate. Not all factors are relevant in all cases, and each factor may properly be accorded different weight depending on the particular factual setting. *A & H Sportswear, Inc.*, 237 F.3d at 215.

Factor 9, the relationship of the goods in the minds of consumers because of the similarity of function, and factor 10, consumers' anticipation of the likelihood of Plaintiff's expansion into Defendant's market, both relate to consumers' expectations. *Chatam*, 157 F.Supp.2d at 555–56. In the instant case, Defendant is an independent computer consultant and software developer while Plaintiff manu-

---

7. Section 43(a) of the Lanham Act provides a federal cause of action for unfair competition, creating liability for:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ... shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act. 15 U.S.C. § 1125(a)(1). To show a Lanham Act violation, a plaintiff must demonstrate that: 1) it has a valid and legally protectable mark; 2) it owns the mark; and 3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion. *Am. Fid. & Liberty Ins. Co.*, No. Civ. A. 97–4307, 2000 WL 1385899, at *13 (E.D.Pa. Sept.25, 2000) (citing *Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 437 (3d Cir.2000)).

factures transportation equipment, selling and leasing dry freight semi-trailers, container chassis, and converter dollies. (Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ.J. and in Supp. of Pl.'s Cross–Mot. ("Pl.'s Opp'n") at 5.) Here, there is no similarity of function between Plaintiff's goods and Defendant's services. Nor do the parties suggest that there is any relationship in consumers' minds between transportation equipment and computer software and consulting services. Likewise, the parties do not contend that consumers are likely to expect Plaintiff's expansion into computer software and consulting. Nor would an ordinary consumer be likely to conclude that Plaintiff's products and Defendant's services share a common source, affiliation, connection, or sponsorship. *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.,* 30 F.3d 466, 480 (3d Cir.1994).

Factor 3, the price of the goods and indicia of the care and attention expected of consumers when making a purchase, also weighs in Defendant's favor. Consumers must use at least ordinary caution in making purchasing decisions and it is presumed that consumers use more care when purchasing important or expensive products. *Id.* at 472, 477. Here, customers are likely to be discriminating when purchasing transportation equipment or computer software. Purchasing transportation equipment or hiring a computer consultant, not insignificant financial transactions, would require a high degree of care and attention from a consumer.

As to factor 5, there is no suggestion that, in choosing the nickname he used since childhood to be his domain name, Defendant intended to confuse or deceive Plaintiff's customers. Rather, it is uncontroverted that he chose his nickname, by which he is commonly known, because his surname was unavailable. As to factor 4, the length of time Defendant has used the mark without evidence of actual confusion, the record shows that Defendant used the strick.com domain name for eight months without evidence of confusion. As with factor 6, there is simply no suggestion whatsoever of evidence of confusion on the part of any consumer.

Factors 1 and 2 inquire into the marks' similarity and the strength of the owner's mark. "Strength" refers to the distinctiveness of the mark, its tendency to identify goods sold under the mark as emanating from a particular source. Overall, factors 1 and 2 slightly favor Plaintiff. Each party's mark is the same. Plaintiff registered the mark "Strick" for freight and heavy duty trailers and truck bodies in 1951. (Am.Compl.Ex.B.) Although Defendant has been commonly known by the nickname "Strick" since childhood, one's right to use a personal name is not unlimited. *See Ford Motor Co. v. Ford Fin. Solutions, Inc.,* 103 F.Supp.2d 1126, 1129 (N.D.Iowa 2000) (finding likelihood of confusion where both plaintiff and defendant provided similar goods and services under the same name). However, despite the similarity of the marks, the sources of the marks are not likely to be confused, as the goods and services offered are quite distinct. *Hasbro, Inc. v. Clue Computing, Inc.,* 66 F.Supp.2d 117, 122 (D.Mass.1999), *aff'd,* 232 F.3d 1 (1st Cir.2000) (noting that although marks were identical, "surrounding conditions mitigate somewhat the similarity"). Given the other factors indicating a lack of confusion, the similarity of the marks is not decisive.[8]

---

8. The Court notes that although Strick may not be a common surname (Snyder Decl. ¶ 6.), the record reflects that there are a number of businesses, as well as Internet web sites using the name "Strick" that are registered to others than the present litigants. (Decl. of

Finally, as noted by the district court in *Chatam*, some of the factors are not particularly helpful here. For example, "the traditional approaches to factors 7 and 8—channels of trade, similar advertising media, and consumer targets" are "distorted by the modality of the Internet." *Chatam*, 157 F.Supp.2d at 555–56. Although the Internet may be a "huge independent marketing force," it is, nevertheless, "not the sole commercial outlet, or window." *Id.* (citations omitted) (recognizing that Internet supplemented other sales activities).

In essence, Plaintiff's arguments of likelihood of consumer confusion boil down to what has become known as "initial interest confusion." *Chatam*, 157 F.Supp.2d at 557–58 (recognizing that "[i]nitial interest confusion ... is the gravamen of this case and of the broader problems presented by the exclusivity of domain names"). However, as *Chatam* observed, "initial interest confusion is of greatest concern when products are in competition with each other." *Id.* at 558 (citation omitted). "Where companies are non-competitors, initial interest confusion does not have the same consequence." *Id.* (citation and internal quotations omitted).

In this case, any initial confusion that arises from Defendant's use of his strick.com domain site, specifically, "that consumers will realize they are at the wrong site and go to an Internet search engine to find the right one—is not substantial enough to be legally significant." *Id.* at 558–59 (citing *Hasbro Inc.*, 66 F.Supp.2d at 125). It is clear that "Internet surfers are inured to the false starts and excursions awaiting them" and are "unlikely to be dissuaded, or unnerved" when, after "tak[ing] a stab at what they think is the most likely domain name for a particular web site" guess wrong and bring up another's webpage. *Id.* at 559 n. 17 (citing *Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*, 104 F.Supp.2d 427, 462 (D.N.J.2000) & *The Network Network v. CBS, Inc.*, 54 U.S.P.Q.2d 1150, 1155 (C.D.Cal.2000)). The Court agrees with the reasoning of the district court in *Chatam*, and finds that any confusion that a consumer may have when reaching Defendant's web page rather than Plaintiff's site is not legally cognizable.

Accordingly, the Court will grant Defendant's motion for summary judgment as to Plaintiff's claim of unfair competition.

### B. *Dilution*

█ Plaintiff and Defendant also seek summary judgment as to Plaintiff's claims of dilution under federal and state law, Counts II and V of the Amended Complaint.

Plaintiff contends that Defendant's domain name dilutes the distinctiveness of its famous mark, violating section 43(c)(1) of the Lanham Act, codified at 15 U.S.C. § 1125(c) (the "federal dilution statute")[9] and Pennsylvania's anti-dilution statute, 54 Pa.Cons.Stat.Ann. § 1124. Dilution is "the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of—1) competition between the owner of the famous mark and other parties, or 2) likelihood of confusion, mistake or deception." 15 U.S.C. § 1127.

Under the federal dilution statute:

The owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court

---

Dusty Mosness ¶¶ 7–8; Decl. of Carl Oppedahl Ex. A–1.)

9. Because it does not affect the outcome, the Court takes no position as to whether the federal dilution statute should not be applied retroactively.

deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection.

*Id.* § 1125(c)(1).[10] To obtain injunctive relief, Plaintiff must show that: (1) his mark is famous; (2) Defendant's use of the mark is commercial use in commerce; (3) Defendant's use of the mark began after it became famous; and (4) Defendant's use dilutes the mark's distinctive quality by lessening the capacity of Plaintiff's mark to identify and distinguish goods or services. *Chatam*, 157 F.Supp.2d at 559 (citing *Times Mirror Magazines, Inc. v. Las Vegas Sports News, L.L.C.*, 212 F.3d 157, 163 (3d Cir.2000), *cert. denied*, 531 U.S. 1071, 121 S.Ct. 760, 148 L.Ed.2d 662 (2001)).

In this case, the dispute largely focuses on the last factor, whether Defendant's use of the strick.com domain name dilutes the distinctive quality of Plaintiff's mark. For purposes of this Memorandum and Order,

the Court will assume, without deciding, that Plaintiff's mark is famous and that Defendant's use of the mark is commercial use in commerce.

Dilution by blurring imputes some mental association between the two trademarks. Blurring creates the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product, causing the public to no longer associate the plaintiff's famous mark with its goods or services. *Times Mirror Magazines, Inc.*, 212 F.3d at 168.[11] However, if a reasonable buyer is not at all likely to link the two uses of the trademark in his or her own mind, then there can be no dilution.[12]

Blurring sufficient to constitute dilution requires a case-by-case factual inquiry, requiring the court to consider: (1) the similarity of the marks; (2) the similarity of the products covered by the marks; (3) the sophistication of the consumers; (4) predatory intent; (5) the renown of the senior mark; and (6) the renown of the junior mark. *Times Mirror Magazines, Inc.*, 212 F.3d at 168. Courts should also consider:

---

**10.** The Pennsylvania dilution statute contains virtually the same provisions as the federal dilution statute. Under 54 Pa.Cons.Stat.Ann. § 1124:

The owner of a mark which is famous in this Commonwealth shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use of a mark or trade name if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark and to obtain such other relief as is provided in this section.

As the federal and state dilution statutes contain virtually identical provisions, they are subject to the same analysis. *See Gideons, Int'l, Inc. v. Gideon 300 Ministries, Inc.*, 94 F.Supp.2d 566, 586 (E.D.Pa.1999) (analyzing factors).

**11.** Plaintiff does not allege that its mark is blurred by tarnishment or improperly associ-

ated with an inferior or offensive product or service, "present[ing] a danger that consumers will form unfavorable associations with the mark." *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 881 (9th Cir.1999) (citation omitted); *Panavision Int'l v. Toeppen*, 141 F.3d 1316, 1326 n. 7 (9th Cir.1998) (citation omitted).

**12.** Courts have rejected the suggestion that the registration of a famous mark as a domain name is *per se* dilution. *Chatam*, 157 F.Supp.2d at 560 n. 18 (stating that "[i]f another Internet user has an innocent and legitimate reason for using the famous mark as a domain name and is the first to register it, that user should be able to use the domain name, provided it has not otherwise infringed upon or diluted the trademark") (citation omitted).

"actual confusion and likelihood of confusion, shared customers and geographic isolation, the adjectival quality of the junior use, and the interrelated factors of duration of the junior use, harm to the junior user, and delay by the senior user in bringing the action." *Id.* (citation and internal quotation omitted).

As discussed *supra*, although the marks are similar, the products covered by the marks are not. Additionally, the parties' customers are not shared, and a certain level of sophistication would be expected of consumers purchasing either Plaintiff's transportation equipment or Defendant's consulting services. There is no suggestion of actual or likely confusion between Plaintiff's products and Defendant's services, and no indication whatsoever of predatory intent. The Court also notes that Plaintiff waited a number of years before bringing the instant Complaint.

Rather than offering allegations to support a traditional theory of dilution by blurring or tarnishment, Plaintiff argues that without the strick.com domain name, he is "completely blocked" from the Internet. (Pl.'s Opp'n at 25 n. 10; Post–Oral Argument Submission Stipulated and Non–Stipulated Facts and Conclusions of Law at ¶¶ 97 & 102.) Plaintiff asserts that consumers searching the Internet for its products are likely to begin by typing "www.strick.com" and that when they reach Defendant's web page, they are likely to mistakenly believe that Plaintiff does not have a web site. (Am.Compl. ¶ 27; Pl.'s Opp'n at 27.) Plaintiff theorizes that

dilution occurs when customers fail to continue to search for its web site, diminishing the capacity of its mark "to identify and distinguish the mark holder's goods and services on the Internet." *Panavision,* 141 F.3d at 1327.[13]

Courts have rejected this theory, noting that trademark law requires reasonableness on the part of consumers. *HQM, Ltd. v. Hatfield,* 71 F.Supp.2d 500, 508–09 (D.Md.1999); *Hasbro Inc.,* 66 F.Supp.2d at 124–25. Although the need to search for a mark holder's site "may rise to the level of inconvenience, this inconvenience [is] not cognizable." *HQM Ltd.,* 71 F.Supp.2d at 508 (citing *Hasbro,* 66 F.Supp.2d at 124–25) (internal quotations omitted); *Chatam,* 157 F.Supp.2d at 558–59 (same).

An Internet user who intends to access either party's products or services, but who has not done so before, may go to a search engine, or on America Online, to Keyword. *Chatam,* 157 F.Supp.2d at 554 n. 9. Any inconvenience to an Internet user searching for Plaintiff's web site is trivial. Searches for Plaintiff's web page on popular internet search engines, including google.com, goto.com, and lycos.com, list Plaintiff's web site as their first or second "hits." (Mosness Decl. ¶¶ 3–5.) It is clear that the mere lack of ownership of the domain name strick.com does not foreclose Plaintiff's presence or use of its trademark on the Internet. To the contrary, the record shows that Plaintiff, who maintains, *inter alia,* web sites at stricktrlr.com, strck.com, stricktrailer.com, strickcorp.com, and strickparts.com, has a readi-

---

**13.** Unlike the cases Plaintiff cites, in this case there is neither "evidence to believe that a consumer may mistakenly associate" the computer consulting services offered on Defendant's web site with Plaintiff's products. *PACCAR, Inc. v. Telescan Tech., L.L.C.,* 115 F.Supp.2d 772, 780 (E.D.Mich.2000), nor evidence of cyberpiracy, *Virtual Works, Inc. v. Network Solutions, Inc.,* 106 F.Supp.2d 845,

847 (E.D.Va.2000), *aff'd,* 238 F.3d 264 (4th Cir.2001). Plaintiff does not allege that Defendant has registered multiple domain names, registered multiple variations of Plaintiff's mark, or ever sold a domain name. Nor does Plaintiff allege that Defendant operates a business of marketing domain names, or that he has hyperlinked his domain name to any of Plaintiff's web sites.

ly visible presence on the Internet. *See* Pl.'s Post–Oral Argument Submission Stipulated and Non–Stipulated Facts and Conclusions of Law ¶ 43 (stating that Plaintiff "promotes its goods and services prominently on the Internet, displaying and emphasizing the 'STRICK' trademark") (citing Puchino Decl.Ex. A).

Finally, it is clear that "[n]othing in trademark law requires that title to domain names that incorporate trademarks or portions of trademarks be provided to trademark holders." *HQM Ltd.,* 71 F.Supp.2d at 508 (citing *Washington Speakers Bur., Inc. v. Leading Auth. Inc.,* 49 F.Supp.2d 496, 498 (E.D.Va.1999)); *Chatam,* 157 F.Supp.2d at 561. "To hold otherwise would create an immediate and indefinite monopoly to all famous marks holders on the Internet, by which they could lay claim to all .com domain names which are arguably 'the same' as their mark. The Court may not create such property rights-in-gross as a matter of dilution law." *HQM Ltd.,* 71 F.Supp.2d at 507 (citing *Ringling Bros.–Barnum & Bailey Combined Shows, Inc. v. Utah Div. of Travel Dev.,* 170 F.3d 449 (4th Cir.1999), *cert. denied,* 528 U.S. 923, 120 S.Ct. 286, 145 L.Ed.2d 239 (1999)). "[T]rademark law does not support such a monopoly." *Chatam,* 157 F.Supp.2d at 561 (citation omitted).

Accordingly, the Court will grant Defendant's motion for summary judgment as to Plaintiff's claims of dilution under federal and state law, Counts II and V of the Amended Complaint.[14]

## IV. *CONCLUSION*

For the reasons set forth above, Defendant's motion for summary judgment will be granted and Plaintiff's cross-motion will be denied.

An appropriate Order follows.

### ORDER

**AND NOW,** this 27th day of August 2001, upon consideration of Defendant's Motion for Summary Judgment, Plaintiff's Cross–Motion for Summary Judgment, and the responses thereto, *IT IS ORDERED* that:

1) Defendant's Motion for Summary Judgment (Doc. # 15) is **GRANTED;**

2) Plaintiff's Cross–Motion for Summary Judgment (Doc. # 36) is **DENIED;**

3) Judgment is entered in favor of Defendant and against Plaintiff as to all counts in Plaintiff's Amended Complaint; and

4) Defendant's remaining counterclaims are **DISMISSED WITHOUT PREJUDICE.**

---

14. In entering judgment against Plaintiff as to the remaining counts in the Amended Complaint, the Court notes that this Order may not result in the end of the litigation because several of Defendant's counterclaims remain. However, because some of these may now be moot, the Court will dismiss the remaining counterclaims without prejudice to their refiling in an appropriate amended fashion.